THE INDIANAPOLIS & ST. LOUIS RAILROAD COMPANY

*v.*

EDWARD STABLES.

1. RAILROADS—*relative rights over public crossings.* Railroad companies, under their charters, have the same right to use that portion of the public highways over which their track passes as other people have to use the same. Their rights and those of the people as to the use of the highways at such points of intersection are mutual, co-extensive, and reciprocal; and in the exercise of such rights all parties will be held to a due regard to the safety of others, and to the use of every reasonable effort to avoid injury to others.

2. SAME—*presumption.* It will be presumed that the servants of a railroad company having charge of its trains are cognizant of the road crossings along the line of their road; and when any such crossing is obviously a dangerous one, that the employees of the company knew such fact as well as that persons are liable at all times to be in the act of passing.

3. SAME—*diligence measured by the danger.* The degree of diligence and care required of railroad companies, it seems, is not fixed by any definite and precise rule, but depends rather upon the facts and circumstances of the case, so that what would be an unnecessary act in one case would be imperatively demanded in another.

4. SAME. It may be that there are places where it would be negligence to construct a road crossing over a highway without making a bridge for

the latter over the railroad track; but at any rate the company must be held to a sufficiently high degree of diligence to overcome, as far as practicable, the danger.

5. NEGLIGENCE—*question of fact.* The question of negligence is one of fact to be found by the jury. It depends, to a great extent, upon the surrounding circumstances of each case; and unless in case of gross acts of carelessness or failure to observe some positive requirement of law, the courts can not adopt any positive rule on the subject.

6. SAME. Where a railroad is so constructed that the place where it crosses a public highway is unusually dangerous to the traveling public, as where its track intersects the highway in a cut and is approached on the road by descending a hill, and persons approaching the crossing can not see the railroad track owing to brush and bushes until within a few feet of it, and then only a small portion of it, owing to a sharp curve: *Held,* that a neglect to sound the whistle or ring the bell as required by the statute under such circumstances, would be gross negligence.

7. SAME—*speed of train.* And where a railroad track crossed a public highway at a place of unusual danger and peril to persons who might be passing over such crossing in the highway, and a person traveling over the same with his wagon and team was struck and injured by a passing train which was running at a rapid rate: *Held,* that the speed of the train might be considered in connection with the location of the roads and the other surrounding circumstances on the question of negligence.

8. SAME—*where plaintiff is also negligent.* In case of personal injury from negligence the well established rule of this court is, that the plaintiff will recover even though he was negligent himself, if the negligence of the defendant was so much greater as when compared with that of the plaintiff that the negligence of the latter was slight.

9. SAME—*contributory.* The well established rule of this court in regard to contributory negligence resulting in injury is, that the plaintiff may recover, notwithstanding he was himself negligent if his negligence is slight when compared with that of the defendant.

10. SAME. In this case the plaintiff, while in the act of crossing defendant's railroad at its intersection of the public highway, was struck by an engine of defendant, attached to a train, and received severe personal injury. The railroad was in a cut and was approached by defendant on the highway by descending a hill. When about sixty-five yards from the track he stopped his team, looked and listened for the train, and neither seeing nor hearing it he proceeded to cross. In approaching, the track was hidden from view by bushes and shrubs until within a few feet of it, and then only a small part of the track could be seen, owing to a sharp curve in it. It appeared that the train was running at an unusual speed. Plaintiff's horses became frightened and unmanageable so that they required his whole atten-

tion. It appeared that the statutory signal was not given before reaching the crossing: *Held*, that the defendant was guilty of gross negligence, and that even if any negligence was attributable to plaintiff, it was slight in comparison with defendant's.

11. DAMAGES—*personal injury.* In an action to recover damages for a personal injury from being struck by a train of passing cars, on the ground of negligence, the court instructed the jury in case they found for the plaintiff, in assessing damages they might take into consideration the plaintiff's pain and anguish of mind consequent upon such injury: *Held*, that there was no error. But mental anguish not connected with bodily injury is not proper to be considered in such a case.

WRIT OF ERROR to the Circuit Court of Shelby County; the Hon. ARTHUR J. GALLAGHER, Judge, presiding.

Messrs. MOULTON & CHAFFEE, for the plaintiff in error.

Messrs. EDEN, HALL & WENDLING, and Messrs. HENRY & READ, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case brought by defendant in error in the Shelby Circuit Court against plaintiff in error, to recover damages for injury received by reason of alleged negligence of the employees of the railroad company. It appears that, on the 6th day of July, 1870, defendant in error started to Shelbyville in a two-horse wagon, accompanied by his son and daughter, and when about sixty-five yards from the railroad crossing at which the injury occurred, he stopped and listened, to ascertain if a train was approaching, but hearing none, he started down the hill at a moderate speed, and when on the railroad track his wagon was struck by a passing train and his wagon badly broken and he was severely injured.

It is urged by plaintiff in error that there was gross negligence on the part of defendant in error in the manner in which he approached the crossing, whilst, on the other side, it is insisted that there was gross negligence on the part of the

company in running at a dangerous rate of speed, and in failing to ring a bell or sound a whistle, so as to give due and timely notice of approaching danger.

In the case of the *Galena & Chicago Union R. R. Co.* v. *Dill,* 22 Ill. 264, it was said that a railroad company, by obtaining their charter and acquiring the right of way, became invested with the exclusive right to use and enjoy it, except such portions as passed over highways, and as to that portion, in the course of their business, they acquired the right to use it in the same manner, to the same extent, and under the same restrictions as other people ; that they had the same, but no better, right to cross a highway with their trains at the point of intersection with their tracks, that individuals have to cross their road at the same point. This right is mutual, co-extensive and reciprocal, and in the exercise of these rights all parties must be held to a due regard for the safety of others. In the exercise of these rights they must be severally held to the use of every reasonable effort to avoid inflicting or causing injury or loss to others ; that it would be presumed that the servants of the company having charge of its trains were cognizant of the road crossings along the line of their road, and that persons are at all times liable to be in the act of passing the point of intersection, and they must be on the lookout, so as to avoid injury to such persons, as well as those in their charge, so far as may be done by the use of all reasonable efforts.

In that case it was said that the question of negligence was one of fact, which must be left to the jury for determination ; that it depended, to a great extent, upon the surrounding circumstances of each case, and unless there were gross acts of carelessness, or a failure to observe some positive legal requirement, the court could not adopt any rule on the subject ; that the jury must necessarily consider the relative situations of the parties, and all of the attendant circumstances, and determine whether there has been negligence or whether the occurrence was purely accidental and without fault of either party. The situation of the parties, the difference in locality, the state

of the roads, the weather, and many other circumstances which are never the same, and which vary almost infinitely, render it impossible to lay down any precise and definite rule of conduct that should govern in every case. What would be an unnecessary act in one case would be imperatively demanded in another. Where the crossing is on a level, at right angles, and the surrounding country is open, and the view unobstructed, we should not expect the same high degree of caution as should be exercised where the railroad was in a hollow, or deep cut, and approached the crossing on a sharp curve, and the view of the road was obstructed by timber, brush, fences, and the like.

In this case the railroad crossing was approached, from the direction in which defendant in error was traveling, by descending a hill. This railroad track, as appears from the evidence, was in a cut, and the track was hid from view by brush and shrubs between the highway and the railroad, so that a person could not see along the track, in the direction from which the train approached the crossing, until within a few feet of the track; and not then but a short distance, owing to a sharp curve a short distance from the place of intersection; these things all considered, it is obvious the place was one of unusual danger to persons traveling the road; and being of that highly dangerous character, and the danger being so obvious, the employees must be presumed to have known the fact, and were required to observe every precaution which would present itself to the mind of a prudent person; and any omission of a statutory or common law duty must render the company liable for all damages that may result therefrom.

A mere compliance with the requirements of the statute, in sounding a whistle or in ringing a bell, does not authorize those having charge and control of these mighty forces to omit other reasonable and necessary precautions, and to destroy life, or inflict great bodily injury. Because the statute has imposed specified duties, it does not follow that the employees of these companies are released from the dictates of

humanity or the common legal duty of regarding the rights
of others.  It may be that there are places where it would be
negligence to construct a road crossing over a highway with-
out making a bridge for the latter over the railroad track ;
this might be the case where it is manifest that human life
would be constantly in peril owing to a deep cut and a steep
approach to the track ; but, be that as it may, when a road is
so constructed that its crossing is necessarily dangerous, the
company must be held to a sufficiently high degree of dili-
gence to, as far as practicable, overcome the danger.

In this case the crossing would seem to have been highly
perilous to persons traveling the highway, and the evidence
strongly impresses us that even the statutory duty of sound-
ing the whistle or ringing the bell was wholly omitted ; and
if so the persons in the wagon were deprived of the warning
that was intended to place them on their guard that they might
avoid the peril that then threatened their lives—it deprived
them of the warning that was intended to enable them to avoid
instant and violent death.  If the bell was rung, or the whis-
tle was sounded, it is incomprehensible how so many persons
whose attention was attracted to the situation of the parties
failed to hear them ; but all did hear the whistle for brakes as
the collision occurred.  This can not be fairly said to be nega-
tive evidence, as these persons were in a situation to see and
hear, and their attention was attracted to what was transpiring ;
had their attention been directed to other objects it might have
been otherwise.  But there was a conflict in the testimony,
and the jury were fully warranted in finding that the bell was
not rung or the whistle sounded, as required by the statute ;
and if not there was gross negligence, as this was a place of
such hazard.

But it is said that, owing to the noise made by the wagon of
defendant in error, he did not hear the sound of the ap-
proaching train, and would, in all probability, not have heard
the bell or whistle.  We have but little doubt the reverse of this
proposition is true ; the difference in the character of the
sounds of the wagon and the bell or whistle is so great that

it could scarcely have failed to attract attention. On the other hand, the noise of the train and the wagon are not so dissimilar as to attract attention. At any rate, defendant in error was entitled to the additional chance of saving his life and of avoiding danger.

Again, the train was running at a rapid rate of speed. All of the witnesses for defendant in error say the train was running very fast; and one of them, faster than he had ever traveled. It may be they could not say that it ran at precisely so many miles an hour—and it is probable that experts could alone have determined that question—but the witnesses, having, at least, ordinary intelligence, could determine whether it ran fast or slow, or whether it was very fast, although they could not state the number of miles per hour. And if very fast, the jury could say whether that, with the location of the road and other circumstances, constituted negligence.

Was the defendant in error guilty of negligence; and, if so, to such an extent as to prevent a recovery? Even if negligent, he still may recover if the negligence of plaintiff in error was so much greater as when compared with that of defendant in error it was slight. This is the rule in regard to contributory negligence, long and uniformly established by numerous cases of this court; and, in establishing and adhering to it in the many cases in which it is announced, it was done with a full knowledge that other courts apparently announce a different rule; but it is regarded as the settled law of this court.

Defendant showed that he was trying to exercise caution when he stopped sixty-five yards from the railroad track and looked and listened for the train; and, neither seeing nor hearing it, he then proceeded to cross the track. An engine driver might have been able to calculate the chances more accurately than he did. The jury, no doubt, declined, and properly so, to determine the question of prudence by so high a standard. He, no doubt, supposed, and it is probable that the great majority of men not skilled or familiar with the speed of railroad trains would have supposed, that, there being no train in hearing, he could have trotted his horses sixty-five yards

before a train could, at ordinary speed, reach the crossing. And we think his calculation was correct had the train only been run at the usual rate of speed. His horses had passed the track, and a few seconds more would, in all probability, have relieved him from all danger; or, had his horses not become unmanageable on the track, he would have escaped. And there is no evidence that he had the slightest reason to suppose they would have so acted. The unusual speed of the train, then, may have, and no doubt did, contribute directly to the injury.

It is, however, said that it was negligence in defendant in error not to look along the track as he was driving across the track. This may have been negligence; but when we see that he could not see along the track until within a few feet of it, and that his horses required his immediate attention in crossing, we think the jury were warranted in finding his negligence slight when compared with that of the servants of the company.

It is also insisted that the court erred in giving the eighth instruction asked by defendant in error without a modification. The part objected to informed the jury that they might take into consideration pain and anguish of mind consequent on such injury. The instruction is sustained by the case of The Peoria Bridge Association v. Loomis, 20 Ill. 235. But we are referred to the case of Ill. Cent. R. R. Co. v. Sutton, 53 Ill. 397, where it is said it is error to so instruct the jury unless the injury is willful, and 2 Greenleaf's Evidence, Sec. 267, is referred to in support of the rule. And that author bases the rule on the case of Canning v. Williamston, 1 Cush. 451, which, so far from supporting the doctrine, announces the reverse of the proposition. And a reference to adjudged cases shows the current of authority is the other way. In fact, we can not readily understand how there can be pain without mental suffering. It is a mental emotion arising from a physical injury. It is the mind that either feels or takes cognizance of physical pain, and hence there is mental anguish or suffering inseparable from bodily injury, unless the mind is overpow-

ered and consciousness is destroyed. The mental anguish which would not be proper to be considered is where it is not connected with the bodily injury, but was caused by some mental conception not arising from the physical injury.

But in the *Ill. Cent. R. R. Co.* v. *Sutton, supra,* the error was not considered of sufficient gravity to require a reversal; and we feel required to modify the rule there announced.

We do not regard the damages excessive, in view of the character and extent of the injuries received by defendant in error. After a careful examination of the record we fail to find any error requiring a reversal of the judgment, and it must be affirmed.

*Judgment affirmed.*