KALEN *v.* TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY.

[No. 2,292.   Filed September 23, 1897.]

COMPLAINT.—*Willful Injury.*—A complaint for a willful injury must show by some consistent form of averment that the injurious act was purposely done with the intent on the part of the doer to inflict willfully and purposely the particular injury of which complaint is made.   *p. 204.*

DAMAGES.—*Mental Anguish.*—Mental suffering caused by the negligent act of a railroad company, where such suffering is unaccompanied by any physical injury, cannot be the foundation of an action for damages.   *pp. 205–213.*

SAME.—*Nominal Damages.*—The Appellate Court will not reverse a judgment for the purpose merely of enabling a party to recover nominal damages.   *p. 213.*

From the Vigo Superior Court. *Affirmed.*

*J. O. Piety* and *J. E. Piety*, for appellant.

*T. J. Golden, McNutt & McNutt*, for appellee.

BLACK, J.—The complaint of the appellant against the appellee consisted of two paragraphs. A demurrer to each paragraph was sustained.

In the first paragraph, after introductory averments describing the appellee and its railroad, it was alleged, in substance, that where the appellee's road crosses Seventh street, in the corporation limits of the city of Terre Haute, the appellee, some time prior to the commission of the injuries in this paragraph com-

plained of, erected and maintained on either side of its tracks, at said crossing, gates, and had ever since maintained such gates; that for the purpose of raising and lowering said gates, and for other purposes, the appellee, prior to the commission of said injuries, stationed a watchman at said crossing; and that on or about the 8th day of June, 1895, the appellee was so maintaining said gates and had a watchman stationed at said crossing for the purpose aforesaid; that on or about that day, the appellant, in company with her husband and child, was traveling in a buggy drawn by one horse, along said Seventh street, and going north; that when they reached said crossing the gates were raised and not moving, and the crossing was open for travel; that said horse was being guided and driven by appellant's husband; that when she, so traveling, was in the act of going over and across said railroad tracks at said crossing, the appellee, by its agent, said watchman, carelessly and negligently let down and lowered said gate, so that it came down in front and over said horse, and struck the buggy in which appellant was riding, causing said horse to become frightened and to rear, plunge, start and run north on said street for a great distance, which street was then and there crowded with passengers and vehicles; that said buggy in which appellant was riding, while being drawn at a great and dangerous speed, as aforesaid, by said frightened horse, struck another vehicle with great force; that appellant was at the time carrying her infant child, which was about nine months old; that by reason of the appellee, by its agent, said watchman, wrongfully, carelessly and negligently letting down and lowering said gates as aforesaid, which caused said horse to become frightened, to start, rear, plunge and run as aforesaid, the appellant, without any fault on her part or on the part

of her said husband, received a severe nervous shock, was greatly frightened, and her life was put in great and imminent peril, danger, jeopardy, and, further, she has suffered great mental pain and anxiety; and that by reason of said injuries she has been damaged in the sum of two thousand dollars.  Wherefore, etc.

The second paragraph is like the first, except that before the words "wrongfully, carelessly and negligently," where first used, the words "willfully, unlawfully" are inserted, and where used the second time the word "willfully" is inserted.

The argument of counsel relates only to the averments concerning damages in the complaint.

In the second paragraph, the pleader, employing the same averments as to negligence as those used in the first paragraph, appears by the insertion of other words to have sought to frame a complaint for willful injury.  A complaint should not proceed upon a purpose to make it good as a complaint for either an injury through negligence or a willful injury, or upon a purpose to make it good for an injury both willfully and negligently caused.  It should proceed definitely upon one theory or the other; and, to be good as a complaint for willful injury, it should show by some consistent form of averment that the injurious act was purposely done with the intent on the part of the doer to inflict willfully and purposely the particular injury of which complaint is made.  See *Gregory* v. *Cleveland, etc., R. R. Co.,* 112 Ind. 385.

The second paragraph must be treated as amounting to a complaint for negligence, like the first.

The right to damages for a tortuous injury is not dependent upon its having been inflicted purposely. The wrongdoer is responsible for the consequences of his wrongful conduct; but in the case before us there is no question but one relating to compensatory dam-

ages, and we may leave out of consideration not only cases involving contracts wherein a right to recover damages for mental sufferings has been recognized, but also all cases relating to tortuous injuries in which recovery is allowed for sufferings of that nature by way of exemplary damages or of damages sometimes said to be in the nature of exemplary damages.

Concerning the rule of damages in tort, it is said in *Coy* v. *Indianapolis Gas Co.*, 146 Ind. 655: "All damages directly traceable to the wrong done, and arising without an intervening agency, and without fault of the injured person himself, are recoverable." The rule as thus expressed does not require that the particular injurious consequence complained of should be such as might have been reasonably expected to follow from the negligent conduct, or such as could have been contemplated as the probable result, but only that it be the direct and natural effect of the wrongful act or omission.

A person who wrongfully causes fright to a horse being driven lawfully upon a public highway, by producing an extraordinary noise or by exhibiting an unusual object calculated to frighten horses, is liable for damage caused by reason of the horse taking fright; but it has been said the resultant injury must be of such a general character as might have been reasonably foreseen and provided against. See *Billman* v. *Indianapolis, etc., R. R. Co.*, 76 Ind. 166, 174.

It is well settled that mental suffering may be taken into consideration in estimating damages in cases of physical injury caused by actionable negligence; that recovery may be had for physical and mental sufferings produced by and arising out of such physical injury, and that in such case the jury may consider the bodily pain and suffering and the anxiety and distress caused by the injury as natural and direct results

thereof.   But it has been often denied that fright, peril, pain of mind or mental suffering may constitute a distinct and separate ground of recovery or element of damages, though in truth proximately resulting from a wrong.

It has been the general doctrine that mental suffering alone not accompanied by any physical injury, can not be the foundation for the recovery of damages, except in some instances where they are allowed as a species of punitive damages.   See *Canning* v. *Inhabitants of Williamstown*, 1 Cush. 451; *City of Selina* v. *Trosper*, 27 Kans. 544; *Atchison, etc., R. R. Co.* v. *McGinnis*, 46 Kans. 109, 26 Pac. 453; *Morse* v. *Duncan*, 14 Fed. 396; *Wyman* v. *Leavitt*, 71 Me. 227; *Johnson* v. *Wells, Fargo & Co.*, 6 Nev. 224; *Indianapolis, etc., R. R. Co.* v. *Stables*, 62 Ill. 313; *Terre Haute, etc., R. R. Co.* v. *Brunker*, 128 Ind. 542.

*Ewing* v. *Pittsburgh, etc., R. W. Co.*, 147 Pa. St. 40, was an action by husband and wife for injury to the latter.   The wrong, as stated in the complaint, was a collision of cars upon the railway of the defendant, in consequence of which the cars were broken, overturned and thrown from the track, and fell upon a lot of ground and premises of the plaintiffs and against and upon their dwelling house and thereby greatly endangered the life of the wife, then in the dwelling house, "and subjected her to great fright, alarm, fear and nervous excitement and distress, whereby she then and there became sick and disabled and continued to be sick and disabled from attending to her usual work and duties, and suffered and continues to suffer great mental and physical pain and anguish, and is thereby permanently weakened and disabled."   It was held that the wrong complained of was not the proximate cause of the injury stated.   It was said to be plain that the only injury proceeded from fright,

alarm, fear and nervous excitement and distress, and the court remarked: "We know of no well considered case in which it has been held that mere fright, when unaccompanied by some injury to the person, has been held actionable. On the contrary, the authorities, so far as they exist, are the other way."

In *Haile's Curator* v. *Texas & P. R. R. Co.*, 60 Fed. 557, it was alleged in the plaintiff's petition that the insanity of his ward was caused and brought about by the injuries and sufferings he underwent on account of the accident and hardships complained of. Among the things so complained of was the falling of the train through a bridge, and it was alleged that the shock of the accident was so great as to hurl him from his seat to the floor of the car, where he lay prostrated by the shock. But, as observed by the court, it was not alleged that any bodily injury was sustained by the shock, and there was no claim for damages for any such injury. It was held that the insanity could not be regarded as a proximate effect of the defendant's negligence.

In *Purcell* v. *St. Paul City R. W. Co.*, 48 Minn. 134, 50 N. W. 1034, the complaint showed that the defendant's negligence caused to the plaintiff sudden fright and a reasonable fear of immediate death or great bodily harm, and that the shock thus caused threw her into violent convulsions and caused her a miscarriage and subsequent illness. The court, remarking that it might be conceded that any effect of a wrongful act or neglect on the mind alone will not furnish a ground of action, held that the complaint showed a physical injury, of which the defendant's negligence was the proximate cause.

In *Fitzpatrick* v. *Great Western R. W. Co.*, 12 Up. Can. Q. B. 645, the complaint showing a negligent collision stated, as the damage suffered by the plaintiff, a pas-

senger, that thereby the plaintiff "was much affrighted, terrified and alarmed, whereby she became sick, sore and disordered, and so continued from thence hitherto; during which time she suffered great pain and anguish, insomuch that her life was endangered, and thereby also, by reason of the terror and alarm occasioned to her by the said collision, and of such sickness caused thereby, she had a premature labour, and bore a still-born child." The complaint was held sufficient on demurrer. The court said: "The only difficulty suggested is the introduction of the statement of alarm and affright, as if preceding and occasioning the sickness and disorder. But, in our opinion, we are not bound to read the declaration in that manner. We may, we think, consider the fright and commencement of the sickness, etc., to be alleged as simultaneous; and if, as we do not doubt, the declaration would be good without stating the affright, but stating only the sickness, etc., as the result of the defendant's negligence, we do not see that the addition of this statement makes it demurrable."

In *Victorian Railway Commissioners* v. *Coultas*, 13 App. Cas. 222, before the Privy Council, on appeal from the Supreme Court of the Colony of Victoria, the action was one to recover for injuries sustained by Mary Coultas through the negligence of the appellant and expenses incured by her husband through her illness. The husband and wife, with a brother of the latter, were driving in a buggy, and had to cross a level crossing on the line of the railway. When they came to the railway the gates were closed, and the gatekeeper opened the one nearest them and went across to the opposite gate, they following him. When they were partly on the farther line of railway a train was seen approaching on it. The gatekeeper directed them to go back, but the husband, who was driving,

Kalen *v.* Terre Haute and Indianapolis Railroad Company.

shouted to the gatekeeper to open the opposite gate, and went on. He got the buggy across the line, so that the train did not touch it. But as the train approached the wife fainted. The evidence showed that she received a serious nervous shock from the fright and that illness from which she afterward suffered was the consequence of the fright. It was held on appeal, reversing the judgment below, that the damages recoverable for negligence must be the result of the defendant's act, such a consequence as in the ordinary course of things would flow from the act; and that damages arising from the mere sudden terror, unaccompanied by any actual physical injury, but occasioning a nervous or mental shock, cannot under such circumstances, be considered a consequence which in the ordinary course of things would flow from the negligence of the gatekeeper. It was accordingly held that the damages were too remote.

In the opinion in the last mentioned case it is observed that the decision of the Supreme Court of New York in *Vanderburgh* v. *Truax*, 4 Denio. 464, was a case of palpable injury caused by a boy who was frightened by the defendant's violence, seeking to escape from it.

The decision of the Privy Council in the *Victorian Railway Commissioners* v. *Coultas, supra,* has been regarded with disfavor by several eminent text writers, and there has been great variety and contrariety in the views taken upon the subject by the courts. A forcible criticism upon the case is to be found in 1 Beven on Neg. (2d ed.), p. 76. Among the remarks there made, it is said that it is undoubted law that mental pain or anxiety alone, unattended by any injury to the person, cannot sustain an action. It is also said, on p. 83: "The chief objection in principle to a recovery for injuries occasioned, without physical impact, seems to be the

difficulty of testing the statements of the sufferer alleging them. An allowance of recovery of damages in respect of such nervous injuries affords opportunities for simulation very difficult to be dealt with, and considerations of policy may well disallow any claim in respect of injury purely subjective. When the physical frame is visibly affected, considerations of this kind are no longer paramount. The objection goes rather to the proof of the injuries than to the legal appraisement of damages in respect of them when proved. A sufficient safeguard in this case against imposition seems to be the bearing steadily in view the elementary rule that before a plaintiff can recover he must show a damage naturally and reasonably arising from the negligent act."

In *Bell* v. *Great Northern R. W. Co.*, L. R. 26, Ir. 428, the court followed an unreported case in the court of appeal, Ireland, in preference to *Victorian Railway Commissioners* v. *Coultas, supra*, and it was held, in effect, that if the plaintiff's fright caused through the defendant's negligence as a reasonable and natural consequence thereof, actually occasioned injury to the plaintiff's health as a reasonable and natural consequence of the fright, damages for such injury would not be too remote.

In *Warren* v. *Boston & M. R. R.*, 163 Mass. 484, 40 N. E. 895, the plaintiff, with his wife, was driving in a buggy across railway tracks, when the gates were lowered by the gateman, and the buggy was hit by the train running on one of the tracks, and the plaintiff was thrown out, or he jumped out. The Supreme Court refused to treat as error an instruction to the effect that if the defendant's train struck the carriage of the plaintiff, and he was thrown out upon the ground, this would be a tortuous act if the result solely of the defendant's negligence; and if this act re-

Kalen *v.* Terre Haute and Indianapolis Railroad Company.

sulted in damage to the plaintiff, the defendant would be liable; and that in estimating this damage, the jury might take into account the fright and nervous shock.

In *Spade* v. *Lynn, etc., R. R. Co.,* 168 Mass. 285, 47 N. N. 88, the Supreme Court of Massachusetts recently had before it the question, as stated in the opinion of the court, "whether in an action to recover damages for an injury sustained through the negligence of another, there can be a recovery for a bodily injury caused by mere fright and mental disturbance;" and the court expressed satisfaction with the rule that there can be no recovery for fright, terror, alarm, anxiety or distress of mind, if these are unaccompanied by some physical injury, and thought it should also be held that there can be no recovery for such physical injuries caused solely by such mental disturbance, where there is no injury to the person from without.

In *Mitchell* v. *Rochester R. W. Co.,* 4 Misc. (N. Y.) 575, 25 N. Y. Supp. 744, the negligence of the driver of a street railway car caused the plaintiff, through fright and excitement thereby occasioned, to become unconscious and as a result of the shock she then sustained she suffered a miscarriage and was sick for a long time, the "mental shock" which she then received being, according to the evidence, a sufficient cause for all the "physical ailments" from which she subsequently suffered. It was said: "It is not intended here to impugn the well settled and wholesome rule that no damages can be recovered against a negligent person for purely mental suffering, unaccompanied by any physical injury. It is decided simply that where a physical injury is the natural result of the negligence, although it proceeds from a mental shock caused directly by the negligent act, the defendant is liable if the jury might find from the evidence that the

shock caused the injury." The case of *Victoria Railway Commissioners* v. *Coultas, supra,* is criticised as not well reasoned and as not being based upon authority.

In *Mitchell* v. *Rochester R. W. Co.,* 151 N. Y. App. 107, 45 N. E. 354, the decision last above mentioned of the supreme court was reversed by the court of appeals, and it was held that not only can no recovery be had for mere fright, but also no recovery can be had for injuries which are the direct consequences of it. It was said: "Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of the fright, or the extent of the damages. * * * Moreover, it cannot be properly said that the plaintiff's miscarriage was the proximate result of the defendant's negligence. Proximate damages are such as are the ordinary and natural results of the negligence charged, and those that are usual and may, therefore, be expected;" and it was held that her damages were too remote. The conclusion was stated that no recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury.

In the case before us for decision it is alleged, by way of showing damages arising from the wrongful act of causing the horse attached to the buggy in which the appellant was riding to take fright and run away, that the appellant received a severe nervous shock, was greatly frightened, and her life was put in great and imminent peril, danger, jeopardy, and, further, she has suffered great mental pain and anxiety.

It is not shown that any physical ailment or distress

Kalen *v.* Terre Haute and Indianapolis Railroad Company.

followed as a consequence of the shock, which is not described as enduring, if that would make any difference in the case.

We think it cannot properly be said that such injuries are imaginary or conjectural, or that the sufferings described are not real. Nor does it seem to us proper to say that they cannot be regarded as directly and naturally resulting from the act of the defendant as their proximate cause.

But not every injurious effect of wrong can form the basis of damages. Many ill consequences follow from wrongs as proximate effects for which the law cannot afford redress, because of the inadequacy of the methods and means of courts to reach just and adequate results with sufficient certainty.

The evidence of such injuries is so much within the control of the person claiming to be so injured, and there is so little opportunity for subjecting the fact to the tests which may be and are applied in courts of justice for the ascertainment of the truth to the appreciation of the triors, that besides the encouragement that would be given to increase of litigation, there would be much danger of frequent injustice in allowing such claims to be presented for trial. It would seem that such injuries are among those which courts cannot remedy by means of any practicable methods at their command which can be applied generally so as to secure justice to both the plaintiffs and defendants and so as best to subserve the interests of the community, whose instruments the courts are in the administration of justice. Such claims for redress seem to be outside the wise policy of the law.

If it may be said that the complaint shows the appellant entitled to recover nominal damages, yet this court will not reverse a judgment for the purpose merely of enabling a party to recover such damages.

The judgment is affirmed.