### Mary Haas v. Lizzie Metz.

1. APPELLATE COURT PRACTICE.—When the sustaining of a demurrer to a plea is assigned for error both the plea and the demurrer should be abstracted, in order that the court may consider the alleged error.

2. DAMAGES—*Physical Injuries Caused by Mental Disturbances.*— There can be no recovery for such physical injuries as may be caused solely by mere mental disturbances, where there is no injury to the person from without.

3. RECOVERY—*For Words Not Defamatory.*—Where a person can not reasonably anticipate that words spoken by him and the tone of voice used will cause a recurrence of an hysterical malady of whose existence he was not aware, such words not being defamatory, no recovery can be had.

Trespass on the Case, for an assault, etc. Trial in the Circuit Court of Woodford County; the Hon. GEORGE W. PATTON, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Reversed. Opinion filed September 26, 1898.

THOMAS KENNEDY and R. M. BARNES, attorneys for appellant; ARTHUR KEITHLY, of counsel.

The appellee's injuries in this case do not fall within the rule as to proximate damages. They are too remote; not such as the defendant could have foreseen, as the ordinary, natural, or likely result of loud talking. Loud talking does not as a rule throw even sick women into hysterical spells. There is no proof that it does. There is no proof that Mrs. Haas knew that her conduct would bring about any such results. There is no proof that such conduct ordinarily causes the damages complained of, hence there can be no recovery in this case. Haile, Cur., etc., v. Tex. Pac. R. R. Co., 60 Fed. Rep. 557; Phillips v. Dickerson, 85 Ill. 11; Ewing et. al. v. Pittsburg, C. C. & St. L. R. R. Co., 147 Pa. St. 40; Mitchell v. Rochester Ry. Co., 151 N. Y. 107, 45 N. E. Rep. 354; Renner v. Canfield, 36 Minn. 90; Western Union Tel. Co. v. Haltom, 71 Ill. App. 63; Spade v. Lynn & B. R. Co. (Mass.), 47 N. E. Rep. 88; White v. Sander (Mass.), 47 N. E. Rep. 90.

James A. Riely, attorney for appellee.

The true principle is that where an act is *malum in se*, or *willful*, the person guilty of it is liable for all the consequences, however remote, because the act is *quasi* criminal in its character, and the law conclusively presumes that all the consequences were foreseen and intended. 16 Am. and Eng. Enc. Law, 434; Weick v. Lander, 75 Ill. 93.

Mr. Presiding Justice Dibell delivered the opinion of the court.

This was an action on the case brought by Mrs. Lizzie Metz against Mrs. Mary Haas. The declaration contained three counts. The first was for slander, and the third for assault, and no evidence was introduced to support either. The case was tried on the second count as twice amended. It charges that plaintiff was sick and weak and confined to her bed, and that defendant willfully talked in a loud voice and in an angry manner with divers persons in her hearing, and thereby disturbed her peace and rest and caused her sickness to be greatly aggravated, without plaintiff's fault, and caused plaintiff to be in such a condition of body and mind

that she suffered great pain and distress and was unable to control any muscle in her body for the space of thirty minutes, and became reduced in her nervous system, and about once each month since that time has lost control of the muscles of her body for thirty minutes each time, during which time her muscles remained inmovable and she suffered great pain and agony of mind and body, and was hindered in her housework, and became liable to pay thirty dollars in trying to be cured; and that said maladies became permanent and incurable without her fault, whereby she sustained damages. There was a plea of not guilty, a jury trial and a verdict for one hundred dollars damages. Defendant moved for a new trial, which was denied, and plaintiff had judgment on the verdict. From that judgment defendant prosecutes this appeal.

Plaintiff's husband was a tenant occupying a farm of defendant. Defendant owned the fruit on the farm, and at the time of the injury complained of there were seventy peach trees on the farm, heavily laden with fruit. On the third day after the birth of plaintiff's third child defendant came to plaintiff's house and canned peaches for plaintiff. On the second day thereafter defendant came again in the morning and stayed all day, with other women, some of whom were relatives of one or the other party and some were not. During that day they gathered from defendant's orchard, and peeled and put up fifty-five cans of peaches, and left them for plaintiff. About ten o'clock in the forenoon some question arose whether green or ripe peaches should be canned, and whether they should be picked from the trees or the trees shaken and the peaches taken from the ground. A deaf man, a brother of plaintiff's husband, was in the orchard picking up peaches not far from the house. The discussion began between defendant and the deaf man, and it was necessary to talk somewhat loudly to make him hear. Then defendant went into the house and said she was going to ask plaintiff. According to the testimony for plaintiff, defendant seemed angry and talked in a very loud voice, as loud as she could, and almost screamed. Plaintiff testified:

" She was talking about the peaches being good enough,
and Mrs. Miller said no, they wasn't, and then she says, ' I
am going in to see Lizzie,' and my sister says, ' Don't you go
in there, don't you go in there,' but she came right into my
room. She just came up to my bed and scared me so bad,
and asked me if them peaches weren't good enough for us,
and I told her they were all right, because they were
peaches from the trees, and then she says, ' Didn't I tell you
they were all right ? the peaches are just what they wanted;'
and then she started to holler and went out of the room
and then I began to cry. I commenced to cry, and I got
cold and pains come over me and in about ten minutes these
spells come over me. I just got to shaking and my heart
pained me, and affected my nerves in breathing so that I
got shaky and pains come around my heart." Plaintiff's
sister testified : " She come to the summer kitchen and she
show me the peaches and says, ' They are good enough for
you. Them peaches are good enough for you when you
are getting them for nothing;' and she say, ' They are good
enough for you;' and then she say, ' I am going to show them
to Lizzie;' and I say to her, ' Mrs. Haas, stay out of Lizzie's
room ! stay out of Lizzie's room !' But she went right into
Lizzie's room, and I went into the room after her and she
saying, ' These peaches are good enough for you,' and my
sister was crying and going on. And she told me we can
can other peaches and them now on the ground and that
you better let go to-day. And my sister was crying all the
time; and I says, ' Mrs. Haas, you better go out.' Then she
go out and I hear her in the summer kitchen going on, and
soon she go out to the peach trees, and my sister was
crying."

In the spell which followed, plaintiff was tended and
helped chiefly by the defendant, who, in the absence of any
water then hot, administered brandy and water, and helped
to raise her up, etc. Plaintiff's witnesses testify she had
six of these spells that day, and that since then she has one
about every thirty days. She had one in the presence of
the jury at the trial. The only physician called upon the

stand, a man who had formerly treated plaintiff for this disorder, testified that this was "a spell of hysteria;" that these spells were largely in the control of the will and were often resorted to by people of certain temperaments to obtain sympathy and get their own way. He testified it was a mental disturbance, a nervous disease, a form of insanity. Before plaintiff was married she had had these spells and had been treated for them by several physicians. She testified she had not had them for several years prior to the day in question. At that time she was weak, she had not slept well for several nights, had been kept awake by children in the house, and had been frightened a few days before by her oldest boy being run over. After the day above referred to she did not have another of these spells till the baby fell out of bed, and the plaintiff was frightened thereby, and one of these spells followed. There was no evidence that defendant knew plaintiff had ever had such spells.

The evidence introduced by defendant tended to show she was not angry and did not speak in a loud or angry tone. Defendant was there to do a kindness to plaintiff. While plaintiff's evidence tended to show defendant wished to have inferior fruit put up for plaintiff, defendant's evidence was to the contrary and tended to show that the controversy arose from the man picking up fruit defendant thought too green for canning. She stayed about the place all day and none of plaintiff's relatives and friends said anything implying they thought she was the cause of plaintiff's hysteria. About six months later, and after plaintiff and her husband had left that farm, defendant sued plaintiff's husband for rent, and while that case was on trial this suit was brought, thus getting service in Woodford county upon defendant, who lives in Tazewell county.

Defendant filed a plea in abatement, on the ground she was served in a county other than that of her residence while attending the trial of a case against her there, and that she was privileged from service of summons in that

Haas v. Metz.

county while so attending that trial. A demurrer was sustained to the plea, and this is assigned for error. The plea and the demurrer are not abstracted, and we therefore do not consider the alleged error further than to say the action of the court seems to have been in harmony with Cassem v. Galvin, 53 Ill. App. 419, and 158 Ill. 30.

It is very questionable whether the preponderance of the evidence is not with the defendant upon the material facts. We do not, however, determine that question, as we have reached the conclusion that, assuming plaintiff has proved all her evidence tends to establish, still she has no cause of action. No personal violence or injury of any kind was inflicted upon plaintiff. She was not touched by defendant. The only act or omission charged against defendant in the second count as finally amended was that she " willfully talked in a loud voice and in an angry manner with divers persons in the hearing of the plaintiff." Defendant had no knowledge that plaintiff was liable to hysteria. The second count does not charge she had such knowledge. The hysterical spell plaintiff had was not such a consequence as in the ordinary course of things would follow from asking a sick woman, or others in her hearing, in a loud and angry tone of voice, whether certain peaches shown her were not good enough for her, or telling her they were good enough for her. " The injury in question not being one which the defendant could reasonably be expected to anticipate as likely to ensue from her conduct, we can not regard it as the natural consequence thereof for which defendant is legally responsible." Phillips v. Dickerson, 85 Ill. 11. Mental anguish, not connected with any bodily injury, but caused by some mental conception not arising from physical injury, does not authorize a recovery of damages. I. & St. L. R. R. Co. v. Stables, 62 Ill. 313. In Ewing v. P. C. & St. L. Ry. Co., 147 Pa. St. 40, the court said : " It is plain from the plaintiff's statement of her case that her only injury proceeded from fright, alarm, fear, and nervous excitement and distress. There was no allegation she had received any bodily

injury. If mere fright, unaccompanied with bodily injury, is a cause of action, the scope of what is known as accident cases will be very greatly enlarged; for in every case of a collision on a railroad, the passengers, although they may have sustained no bodily harm, will have a cause of action against the company for the fright to which they have been subjected. This is a step beyond any decision of any legal tribunal of which we have any knowledge. * * * We know of no well considered case in which it has been held that mere fright, when unaccompanied by some injury to the person, has been held actionable. On the contrary, the authorities so far as they exist are the other way." In Mitchell v. Rochester Railway Company, 151 N. Y. 107, plaintiff was so frightened and excited that she became unconscious and suffered a consequent illness. The proof showed the mental shock she received was sufficient to produce that result. The headnote to the case is as follows: "No recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury." Johnson v. Wells, Fargo & Co., 6 Nev. 224, holds there can be no recovery for pain of mind aside and distinct from bodily suffering, but only for mental suffering indivisibly connected with bodily pain arising from some personal injury received. The headnote to Haile's Curator v. T. & P. Ry. Co., 60 Fed. R. 557, is as follows: "Where a passenger on a railroad train receives no bodily injury from an accident caused by the company's negligence, but is made insane by the excitement, hardship and suffering resulting therefrom, the company is not liable in damages therefor, since insanity is not a probable or ordinary result of exposure to a railroad accident." In the opinion the court there said: "If the disease was not likely to result from the accident and was not one which the defendant could reasonably have foreseen, in the light of the attending circumstances, then the accident was not the proximate cause. * * * The defendant had no reason to anticipate that the result of an accident on its road would so operate on Haile's mind as to produce disease—the disease

of insanity—any more than that the exposure and hardship he suffered would produce grippe, pneumonia or any other disease." In Spade v. L. & B. R. R. Co., 168 Mass. 285, the court stated the question there presented to be, "whether, in an action to recover damages for an injury sustained through the negligence of another, there can be a recovery for bodily injury caused by mere fright and mental disturbance." The conclusion reached was as follows: "We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without. The logical vindication of this rule is that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright; and that this would open a wide door for unjust claims which could not successfully be met." White v. Sander, 168 Mass. 296. The cases above cited contain an e a ination of many other ancient and modern cases variously stating and illustrating the general principle.

We conclude that the case at bar comes within the principles above laid down; that defendant could not reasonably anticipate that the words she spoke and the tone of voice she used would cause the recurrence of an hysterical malady of whose very existence she was not aware; and that it is against public policy to permit the recovery of damages for the results produced upon plaintiff by asking her a question in a loud and angry tone of voice. The judgment of the court below will therefore be reversed.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find as a fact that appellant was not guilty of any willful or negligent act, the probable consequences of which would be to produce the injury complained of by appellee.