## Chicago & Alton R. R. Co. v. Sarah Scranton, Adm'x.

1. RAILROADS—*Allowing Carcasses of Animals Killed to Remain Near Highway Crossings.*—The fact that a railroad company allowed the carcass of a cow killed by one of its trains to remain near the track, adjacent to, but not upon the traveled portion of the approach to a highway crossing, causing no obstruction to travel, there being only the remote danger of a passing horse becoming frightened, is not such a danger as would occur to ordinary foresight.

Trespass on the Case.—Death from negligent act.   Appeal from the
Circuit Court of Pike County; the Hon. JOHN J. GLENN, Judge, presid-
ing.   Heard in this court at the November term, 1900.   Reversed, with
a finding of facts.   Opinion filed June 10, 1901.

MATTHEWS & GRIGSBY, attorneys for appellant.

A. G. CRAWFORD and W. L. COLEY, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER delivered the opinion of
the court.

This suit was brought by appellee, as administratrix of
the estate of her husband, to recover for injuries resulting
in his death, alleged to have been caused by the negligence
of appellant; she recovered a judgment of $2,000.

The declaration contains three counts.   The first count
alleges that the appellant while operating its train killed
and deposited a cow upon the approach to a public street
railroad crossing, knowing the placing of the cow there
would render the highway dangerous to travel, and negli-
gently left the same there; and that a team of horses driven
by appellee's intestate became frightened at the dead cow
and ran away, killing him.   The second count alleges that
it was the duty of appellant to maintain suitable approaches
where its railroad crosses the public street and keep the
same free from obstructions; that by reason of the careless
and negligent construction of the approaches and the depos-
iting of the cow on the street at such crossing and leaving
it there for five hours the team of horses became frightened,
ran away and killed the deceased without his fault.   The
third count alleges that the appellant wrongfully placed
upon the highway a dead cow and kept the same there dur-
ing a portion of the night and day, without placing any
signal or notice at, or near it, in consequence of which the
team of deceased while passing along the street became
frightened at the dead cow and ran away, killing him.

From the evidence in the record it is apparent that the
cow in question was killed by one of the appellant's passing
trains, early in the morning before deceased met his death.
There is no evidence to show that the cow was negligently

or intentionally killed. When discovered by some of appellant's section hands, about seven o'clock in the morning, her head and shoulders were lying down the dump at the crossing, with her feet on the edge of the dump within a foot or two of the traveled part of the wagon road. The railroad is elevated above the natural surface at this point, requiring the raising of the highway approaches. A person approaching from the opposite side of the railroad from where the cow was lying, could not readily see her, she being some seven or eight feet from the railroad track. Some question is raised in appellant's brief as to the sufficiency of the evidence to show that she was lying upon the right of way; but we think the evidence is sufficient to justify us in saying that she was lying on the right of way.

Between eight and nine o'clock in the morning, the deceased approached the railroad at the side opposite from where the cow was lying, driving a team of horses hitched to the running gears of a wagon, he sitting on the hind axle and coupling pole. As soon as the horses discovered the cow, they stopped and appeared startled. The deceased urged them on, slapping them with the lines. The horses became frightened, ran away, and threw him off the wagon, killing him.

It is urged that no duty devolved upon appellant, a failure to discharge which resulted in the death of the deceased. It is insisted that there was no duty on the part of appellant to remove the body of the cow from the highway. On the other hand it is contended that such duty was imposed upon it under section 77, chapter 114, Revised Statutes, which reads as follows:

"Hereafter, at all the railroad crossings at highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property."

There is no evidence to show that the crossing in question or the approaches to it were defectively constructed. There is no pretense that any employe of appellant, whose

duty it was to look after the removal of carcasses from appellant's right of way, had any notice of the dead cow being upon the approach to the crossing until after seven o'clock. Less than two hours intervened from the time the station agent and section foreman had notice, to the time Scranton was killed. The question is one of fact, and must depend largely upon surrounding circumstances. To allow a carcass to remain on a railroad track for over an hour, to the menace of passing trains, or on the traveled portion of an approach to a crossing, where it would amount to an actual obstruction to wagon travel, would, in our opinion, constitute an unreasonable delay of removal. But in this case the cow was neither upon the railroad track nor the traveled portion of the approach. There was no danger to passing trains. There was no obstruction to travel on the highway. True, there was the rather remote danger of a passing horse becoming frightened at her, but it was not, in our opinion, such a danger as would occur to ordinary foresight. To constitute a proper foundation for recovery the injury must have resulted from an act or occurrence which ordinary human care and foresight are able to guard against. The frightening of a horse at sight of an unusual object upon the highway is a thing that can not be anticipated.

A careful consideration of all the facts and circumstances attending the death of Scranton leads us to the conclusion that appellee's loss was not proximately caused by appellant's negligence. In this view it is unnecessary to discuss in this opinion the errors assigned upon instructions and admissions of evidence. Appellee has no just cause of action and the judgment will be reversed for the reason that the verdict of the jury was against the law and the evidence.

Reversed.

**Findings of Fact.**—We find that the death of George W. Scranton, appellee's intestate, was not caused by the negligence of appellant, but was the result of accident, for which no legal responsibility attached to appellant.