## John C. Chandler, Appellee, v. Illinois Central Railroad Company, Appellant.

1. RAILROADS—*fright of team.* A jury may reasonably find that a team was frightened by a tie rolling down a railroad embankment where, though a dog barked from the opposite side, the first sign of fright by the team was by the horse on the side of the rolling tie lunging away therefrom.

2. RAILROADS—*negligence.* Railroad employes are only required to anticipate and guard against consequences of rolling ties down an embankment which a reasonable person might expect therefrom.

3. RAILROADS—*frightening horses.* It is for the jury to decide whether there is danger of frightening a team by rolling a tie down a twelve to twenty foot embankment, the foot of which is sixty or eighty feet from the highway.

4. RAILROADS—*frightening horses.* In an action for personal injuries caused by the alleged negligence of the defendant where the declaration states that servants of the defendant threw a tie down an embankment "at and towards" the plaintiff's team, it is not necessary to show intent or purpose to hit the team nor to prove both "at" and "towards" assuming that they differ in meaning.

5. VARIANCE—*when allegation of between declaration and proof need not be determined.* Alleged variance between a declaration which avers that a tie was "thrown" down an embankment at the plaintiff's team, and the proof, in that the proof shows that the tie was only dropped, need not be determined where there is sufficient evidence to warrant a finding that the tie was "thrown."

6. VARIANCE—*when not considered on appeal.* Alleged variance between the declaration and proof should not be considered on appeal where the record does not show that it was pointed out to the trial court or raised therein.

7. PLEADING—*when declaration need not charge permanent injury.* The declaration in a personal injury action need not charge permanent injury where the evidence shows that the injuries charged are in fact permanent.

8. INSTRUCTIONS—*when sufficient as to recovery for mental suffering.* An instruction is not objectionable as authorizing recovery for mental suffering unaccompanied by physical injury where it provides for recovery for suffering in body or mind "resulting from such physical injuries" and for future suffering as the person "will sustain by reason of such injuries."

9. INSTRUCTIONS—*when not error to refuse.* It is not error to refuse instructions where the jury were fully instructed as to every issue.

10. INSTRUCTIONS—*construed.* In a personal injury action, instructions are not sufficiently explicit but are calculated to mislead the jury where they state that the verdict should be for the defendant if from the evidence and instructions the jury believe that the defendant was not negligent but that the injury was caused by an accident which could not have been anticipated, and that the verdict should be for the defendant if the jury believe from a preponderance of the evidence that the injuries were caused by accident and without fault or negligence by the defendant.

11. JUDGMENTS—*when alleged excessiveness waived.* Alleged excessiveness of a judgment is waived if not argued.

Action in case for personal injuries. Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed April 11, 1912.

HUGH CREA and HUGH W. HOUSUM, for appellant; JOHN G. DRENNAN, of counsel.

CHESTER ALLAN SMITH and LE FORGEE, VAIL & MILLER, for appellee.

PER CURIAM: This is an appeal from a judgment rendered by the Circuit Court of Macon county, in favor of appellee against appellant, for the sum of $2,500.00. The action was in case to recover damages for personal injuries alleged to have been caused by the negligence of appellant.

When the trial was entered upon the declaration consisted of six counts; at the close of appellee's evidence in chief, he withdrew the fourth and sixth counts and the case was submitted to the jury at the close of all the evidence, upon the first, second, third and fifth counts. The negligence charged against appellant in each of these counts is substantially the same, and is charged in substantially the same language. Some of the counts set out the environments more in detail than others. The second count as abstracted by counsel for appellant is as follows:

"Second count charges that on the 4th day of May, 1909, the defendant owned and operated certain lines of railroad track from Odin to Centralia, in Marion county, and also owned certain tracks which ran from Salem to Centralia, in Marion county, which last named tracks were, and had been for a number of years, rented, leased or loaned to another railroad corporation known as the Illinois Southern Railroad Company, which said company was upon the day aforesaid in control and using the said leased tracks for their own purposes, and running locomotive engines, cars and trains upon and over said tracks; and that said tracks of the Illinois Southern Railroad Company and the tracks of the defendant joined and united at a junction two miles from Centralia and the tracks of the defendant and the Illinois Southern ran parallel to and with each other upon the same roadbed, said roadbed being elevated above the public highway, to-wit: Twelve feet, for a distance of to-wit: One mile, before the two sets of tracks joined at the aforesaid junction."

''That there was a certain public road running from Salem to Centralia which highway crossed over the tracks of the defendant, and also the tracks leased to the Illinois Southern Company, and after crossing said tracks ran in a southern direction east of the tracks of the Illinois Southern Railroad and the defendant's tracks and parallel with and at a distance of to-wit: forty feet from these aforesaid tracks where the tracks ran upon the common road bed as aforesaid; and whereupon upon the day last aforesaid, the defendant company by its agents and servants, the graders or section workers, were working upon or repairing its track and road bed at this said point, and were taking old and useless ties or logs from the said tracks.''

''That on the 4th day of May, 1909, the plaintiff was riding and driving with all due care and caution in a certain carriage drawn by certain horses upon the highway at a point where the public highway ran parallel to the tracks of the defendant and said tracks of the Illinois Southern Railroad Company; whereupon it became and was the duty of the defendant company to use reasonable care in its work not to scare or frighten horses and teams driving upon the public highway; but defendant not regarding its duty, by its agents, the graders or section workers caused a tie or log of wood which had been taken from the repairs then and there being made by defendant upon its road bed to be carried across the tracks of the Illinois Southern Railroad Company and carelessly and negligently thrown down the side of the embankment towards the said public highway upon which the plaintiff was riding, and at and towards his horse, which negligence of the defendant by its said servants, frightened plaintiff's horses, caused them to run away, and to throw the plaintiff upon the ground and thereby injuring him, his right knee being broken, his right foot smashed and bruised and he has so remained for a long space of time, to-wit: hitherto, and has been

prevented from attending to his business and laid out large sum in endeavoring to be cured.''

The appellant at the close of all the evidence requested an instruction that the jury return a verdict of not guilty; this the court refused. The evidence shows that appellee was injured about two miles north of Centralia near a place called Branch Junction, on a public highway which runs on the east side of, adjoining and parallel with the right of way of appellant. At Branch Junction, the Illinois Southern Railway branches from the Illinois Central and runs northeasterly crossing the said public highway. The railroad tracks near where the accident happened are on an embankment which according to the witnesses is from twelve to twenty feet high. The distance between the bottom of the railroad embankment and the west line of the highway, as testified to by witnesses for appellee, is sixty-four feet, and by witnesses for appellant, eighty-two feet. Section men were at work, some two or three hundred feet north of where the Illinois Southern Railroad crosses the highway, removing old ties from the north-bound track of appellant carrying them across the south-bound track and dropping them down the embankment on the side nearest the highway for the purpose of burning them. About two o'clock on the afternoon of the accident, appellee drove a span of horses, hitched to the running gears of a wagon, south along this highway. Appellee sat on the east side of the hounds of the wagon facing southeast. As he drove past where the section men were at work, two of the men carried a tie from the Illinois Central track across the Illinois Southern Railroad track just north of the switch uniting these tracks and rolled or threw it down the embankment toward appellee's team. There is evidence showing that a dog came running toward the team and barking from a house east of where the accident happened. The horses took fright either at the tie rolling down this

embankment or at the dog and ran away. The appellee was thrown from the wagon and injured. He did not see the section men and the section men did not see him until the team started to run away.

It is contended that from the proof it is uncertain whether the horses took fright at the tie rolling down the railroad embankment on the west side of the highway or at the dog barking at them on the east side of them. The proof is that the first sign of fright by the team was by the horse on the side next the railroad lunging to the left toward the center of the highway or away from the railroad. From this evidence the jury might reasonably find that it was the tie that frightened the team as the team would naturally shy away from and not towards the object at which it took fright. Appellant also contends that from the evidence with all the inferences to be reasonably drawn therefrom, that although it had control over the work being done, yet that it did not violate any duty it owed to appellee since the section men were at work on its right of way and the ties rolled down the embankment neither rolled off the right of way, nor near the highway. "It is, however, a general rule of law that a party should so conduct himself, or use or employ his own property, as not to be likely to injure others; or as the doctrine is expressed in a frequently cited case, whenever one person is placed in such a position with regard to another that it is obvious that if the former does not use ordinary care and skill in his own conduct, he will cause danger of injury to the person or property of the latter, a duty arises to use ordinary care and skill to avoid such danger." 21 Am. & Eng. Ency. of L. 470; Heaven v. Pender, 11 Q. B. D. 503. Appellant's employees were required to anticipate and guard against all consequences that a reasonable person might expect to result from rolling ties down the bank, but they were not required to anticipate and guard against such things as an ordinarily reasonable

man would not expect to occur from the manner of doing the work. There was no negligence in appellant rolling ties down the bank on its own property. The act of rolling the ties down the bank could only become negligent if a team, that was being driven along the highway, would reasonably be expected to take fright and run away, because of the ties rolling down the bank. "The principle is, damages which are recoverable for negligence must be such as are the natural and reasonable result of defendant's act, and the consequences must be such as in the ordinary course of things would flow from the acts and could be reasonably anticipated as a result thereof." Braun v. Craven, 175 Ill. 401; Seith v. Commonwealth Elec. Co., 241 Ill. 252; C. & A. R. R. Co. v. Scranton, 95 Ill. App. 619. Whether there was danger of frightening a team of horses by rolling a tie down a twelve to twenty foot embankment, the foot of which was from sixty to eighty feet distant from the side of the highway, is a question over which reasonable men might differ. It is one peculiarly within the province of a jury to decide. This view of the evidence disposes of appellant's contention that the trial court erred in refusing to direct a verdict in its favor except as to its claim and contention with respect to a variance.

Appellant also insists that there is a variance between the averments of the declaration and the evidence, and that the peremptory instruction should have been given for that reason. The declaration charges in each count that the tie or log of wood "was thrown down the side of the embankment * * * at and towards his (appellee's) horses." Counsel for appellant insist that there is no evidence tending to prove that the tie was thrown "at and towards" appellee's horses, but they contend that what the evidence does prove is, "that the tie was dropped, instead of being thrown down the embankment," and upon this they base their claim that there is a material variance between the declaration and the proof.

The charge in the declaration, more fully stated, is, that the servants of appellant "caused the tie to be carelessly and negligently thrown down the side of the embankment towards the public highway upon which the plaintiff was riding, at and towards his horses." The gravamen of the charge is negligence. To sustain this charge it was not incumbent upon appellee to prove that the servants who handled the tie had in their minds an intent or purpose to hit appellee's horses with the tie, nor was it necessary for him to prove both "at" and "towards," even assuming if we can, that they materially differ in meaning, when used as they appear in the declaration. Proof of either was sufficient; and whether thrown or dropped, the evidence clearly proves that the tie passed down the side of the embankment towards the public highway upon which appellee was riding, and that it passed towards his horses.

As to counsel's contention with respect to "thrown" and "dropped" it is wholly unnecessary for us to discuss or to determine whether or not the difference in meaning between these words, as they appear in the declaration and in the evidence, constitute a material variance.

A number of witnesses testified with respect to the handling of the particular tie in question. One of them, Earnest Stafford, testified as follows: "There were six of us there; I suppose we had taken out twenty or more of them. We threw them or dropped them down the bank on the east side." "I was tossing a tie over, me and Tom Henninger. He was at one end and I at the other. We walked across the Illinois Southern and dropped it down the bank. It rolled down the bank." "There was a ravine between the bottom of the bank and the edge of the thicket at the place where the tie was down in. It must have been something like twelve feet, I suppose, it slid down before it hit the ravine at the bottom. Upon that occasion when

I threw it down did not look to see whether there was anybody coming down the road or not. I did not make any effort to ascertain whether anybody was coming along there. After I dropped the tie and started back to work, I heard a noise and looked around and saw horses running away." "The horses were about fifteen feet south from the point that would be immediately opposite to where we dropped the tie down." Another witness, Hardy McWhurter, testified: "Was working there on the day plaintiff was hurt." "When the ties were taken out they were taken to the embankment and we dropped them down into the ravine or gully below." "Q. How much noise did that tie make as it went down the side of the embankment?" "A. I don't know as it made any; I didn't pay any attention as it was rolling through loose cinders, it couldn't have made much. After being thrown down, I suppose it lay at the edge of the embankment. It struck other ties at the bottom, I guess."

In describing the operation of passing the tie over the edge of the embankment, for the purpose of causing it to land in the ditch at the bottom of the slope of the embankment, some of the witnesses used both words, "threw" and "dropped," while some of them used only the word "dropped," but enough appears from the description of the situation and purpose and manner of handling the ties as detailed by the various witnesses, to fully warrant the jury in believing that the tie was passed over the edge of the embankment with sufficient force and impetus forward to fully meet all the requirements of the word "thrown" as used in the declaration.

Counsel for appellant contend that "there is another variance between the declaration and the proof which is material and fatal to any recovery being sustained, and that is, each count charges that the plaintiff was riding and driving in a certain 'carriage,' and the proof is that it was a 'wagon.' " They say: "A

wagon is one thing and a carriage is another thing."
We do not feel at liberty to discuss this question, for
the reason that it does not appear from the record
that this alleged variance was "pointed out" to the
trial court or that it was in any manner raised in that
court.

With respect to the questions as to negligence on
the part of appellant, contributory negligence on the
part of appellee and proximate cause raised and ar-
gued by counsel for appellant, we are of the opinion
that while these were all debatable questions of fact
when the case was before the jury, the state of the evi-
dence is such as to make it our duty to hold that ap-
pellant is foreclosed upon each and all of these ques-
tions by the verdict.

The court gave at the instance of appellee the fol-
lowing instructions as to the measure of damages:

"The court instructs the jury that if you find for
the plaintiff, you will be required to determine the
amount of his damages. In determining the amount
of damages, the plaintiff is entitled to recover in this
case, if any, the jury have the right to, and they should
take into consideration all the facts and circumstances
as proven by the evidence before them, the nature
and extent of plaintiff's physical injuries, if any, so
far as the same are shown by the evidence to be the
direct result of the injury, his suffering in mind and
body, if any, resulting from such physical injuries
and such future suffering and loss of health, if any, as
the jury may believe from the evidence before them in
this case he has sustained or will sustain by reason of
such injuries and may find for him such sum as in the
judgment of the jury under the evidence and instruc-
tions of the court in this case will be fair compensation
for the injuries he has sustained or will sustain, if any,
so far as such damages and injuries, if any, are
claimed and alleged in his declaration and proven, and
it is not necessary for any witness to express an opin-
ion as to the amount of such damages."

Counsel for appellant challenge this instruction upon three grounds: That the declaration does not charge that the injuries are permanent, nor that suffering and loss would continue into the future; that the instruction contains the element of suffering in mind; that this would allow a recovery for mental anguish; and that the instruction is not supported by the evidence.

The undisputed evidence proves that appellee was very seriously injured in the respects charged in his declaration, and it tends strongly to prove that he had not fully recovered at the time of the trial, and the very nature of the injuries establishes pain and suffering. True the declaration does not charge permanent injury, but such a charge is not necessary where the evidence proves that the injuries charged are in fact permanent. Furthermore, if we may assume that while the evidence tends to prove that appellant had not recovered at the time of the trial, it does not prove a permanent injury; still an inspection of the instruction shows that it neither assumes nor mentions a permanent injury.

Counsel say there can be no recovery for mental suffering unaccompanied by physical injury. That is true, but this instruction guards that point by saying, his suffering in body or mind, if any, "resulting from such physical injuries * * * and such future suffering * * * if any as the jury may believe from the evidence * * * he * * * will sustain by reason of such injuries." This instruction as given is fully supported at the points attacked, by the following cases: West Chicago St. R. R. Co. v. McCallum, 169 Ill. 240; Eagle Packet Co. v. Defries, 94 Ill. 598; Springer v. Schultz, 205 Ill. 144; Consolidated Traction Co. v. Schritter, 222 Ill. 364; Indianapolis & St. Louis Railroad Co. v. Stables, 62 Ill. 313.

Counsel presented to the trial court twenty-nine instructions on behalf of appellant. The court gave six-

teen of them and refused the others, and counsel insist that the court erred in refusing those not given, and especially so as to two of them, the 8th and the 12th. These two instructions are as follows: 8th. "The jury are instructed that if you believe from a preponderance of the evidence that the injuries to the plaintiff were the result of mere accident and without any fault or negligence on the part of the defendant or its servants, then your verdict should be for the defendant." 12th. "If you believe from the evidence under the instructions of the court, that there was no negligence on the part of the defendant, but that the injury to the plaintiff was the result of an accident, which could not reasonably have been anticipated or expected to happen under the same or similar circumstances, then your verdict should be for the defendant." These two instructions or these in both substance and general form, are frequently asked in cases of this class and sometimes given, and there are a few cases holding that it is an error to give them, but we know of no case in which it has been held error to refuse them or either of them. They are not sufficiently full and explicit and are in a form well calculated to mislead a jury. In this case, however, there could be no reversible error in the refusal of them, for the reason that the jury were fully instructed as to the law upon every issue in the case in the instructions that were given.

The appellant has also assigned for error that the judgment is excessive but it has presented no argument concerning the damages hence it has waived such assignment. We find no substantial error in the record and the judgment of the Circuit Court is affirmed.

*Affirmed.*