## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. STEWART.

[No. 2,441. Filed March 28, 1900.]

COMPLAINT.—*Theory.*—Only one theory can be contained in a single paragraph of complaint. *p. 378.*

SAME.—*Theory.*—The theory of a complaint must be determined from its leading allegations. *p. 378.*

DAMAGES.—*Personal Injury.*—*Nervous Prostration.*—*Fright.*—*Proximate Cause.*—An action cannot be maintained for damages for nervous prostration and permanent impairment of health resulting from fright, caused by defendant's negligence, when such fright does not arise from impending or apparent danger to the person demanding damages, but from the possible danger or peril of another. *pp. 378-390.*

Cleveland, etc., R. Co. *v.* Stewart.

From the Marion Superior Court.  *Reversed.*

*John T. Dye, Byron K. Elliott, Wm. F. Elliott* and *Frank L. Littleton,* for appellant.

*John L. Griffiths* and *Alfred F. Potts,* for appellee.

WILEY, C. J.—Counsel for appellee, in their brief, aptly say that the "question presented in this case is whether or not appellee is entitled to recover damages for personal injuries caused by fright, and resulting in nervous prostration and a permanent impairment of health." The record, by the assignment of errors, presents but two questions: (1) The sufficiency of the amended complaint, and (2) the overruling of the motion for a new trial.

If the amended complaint, upon its conceded theory, does not state a cause of action, questions arising under the motion for a new trial need not be noticed. The amended complaint is somewhat lengthy, but it will be necessary to set it out quite fully, to the end that its general scope and theory may more clearly appear. As preliminary to the averments stating facts upon which appellee bases her right of action, it is averred that appellant is a common carrier; that the appellee had been seriously ill, and was just recovering; that she, in company with her husband and two children, had purchased tickets which entitled them to be carried over appellant's road from Muncie, Indiana, to Indianapolis, Indiana, and then continues as follows: "That while plaintiff and her said companions were waiting at said station,  *  *  *  said train arrived at said station, and was stopped at the platform thereof for the purpose of discharging and receiving passengers; that the plaintiff and her said husband and children attempted to get upon and enter one of defendant's passenger coaches, then and there a part of defendant's said train, in which coach plaintiff and her said companions were then and there entitled to be carried by reason of the tickets held by each of them, respectively; that plaintiff, assisted by her said husband, got

upon the step of said car for the purpose of entering the same, and was proceeding to do so, when a brakeman, a servant and agent of said defendant, and one of the defendant's employes, then and there in charge of said train, acting within the line of his duty, and within the scope of his employment, and then and there well knowing the weak and enfeebled condition of plaintiff, ordered and directed plaintiff and her said companions not to enter said car, and carelessly and negligently directed plaintiff and her said companions to follow him to another of defendant's cars, then and there a part of defendant's said train; that plaintiff and her husband obeyed the aforesaid directions and orders of said brakeman, got off of said car, and followed said brakeman to another of defendant's cars, then and there a part of said train, and containing passengers; that said brakeman got upon the platform of said last named car, and attempted to open the door thereof for the purpose of allowing the plaintiff and her said companions to enter the same; that the defendant had then and there, carelessly, negligently, and unlawfully suffered and permitted the door of said car to be fastened in such manner that no ingress to said car could be had from the platform thereof, and said brakeman was wholly unable to open said door, or to obtain entrance thereto, and wholly failed to afford plaintiff any means or opportunity of entering said car; that plaintiff and her said husband, in obedience to the orders and direction of said brakeman, and following him upon the step of said car, were then and there ready to enter the same as soon as the opportunity should be afforded therefor; that while plaintiff and her said companions were attempting to enter said car in the manner aforesaid, the defendant, well knowing at the time the situation of the plaintiff, and that she was entitled to be carried upon said train, carelessly and negligently started said train, and put the same in rapid motion, and the said brakeman ordered and directed plaintiff and her said companions to get away

from said car, and the said train was, by defendant, put in rapid motion and moved away from said platform and station, and city of Muncie, and plaintiff and her said companions were carelessly and negligently left upon said platform without any means or opportunity afforded them of entering said train; that by reason of the careless and negligent starting of said train, while the plaintiff and her said companions were in the situation aforesaid, plaintiff's said daughter was dragged along said platform by the force of said moving train, and was in imminent danger of being drawn under the wheels of said moving train, and mangled and killed before plaintiff's eyes; that plaintiff saw the danger of her said daughter, so caused by the carelessness and negligence of the defendant, as aforesaid, and was thereby greatly terrified and frightened, and would have fallen upon said platform had not her husband caught her in his arms; that plaintiff was carried by her said husband into the waiting-room of said station, where she was compelled to remain several hours before the defendant again offered her an opportunity to continue and complete her said journey to said city of Indianapolis; that by reason of the shock and fright attendant upon the danger to plaintiff's daughter, as aforesaid, and the excitement, worry, and delay caused by plaintiff being left at said station, as aforesaid, all of which was caused by the carelessness and negligence of the defendant, the plaintiff, enfeebled by sickness and disease, as aforesaid, was then and there prostrated and made sick, her nervous system was shattered and she was taken suddenly and seriously ill, and was thrown into a relapse of the disease from which she had so nearly recovered, as aforesaid, and has ever since remained sick, and has been compelled to keep to her bed, and has been confined thereto, and will continue to remain sick and be confined to her bed during the remainder of her life, and has been and will continue to be deprived of the privileges of life, and has suffered and will continue to suffer great bodily

pain and anguish of mind,—all of which has been and will be caused by the careless, negligent, and unlawful acts of said defendant, as above set forth, and without any fault or negligence on the part of plaintiff contributing thereto; by reason of which plaintiff has been damaged in the sum of $10,000."

Under the well established rule in this State, a complaint must be construed upon the theory which is most apparent and clearly outlined by the facts stated therein. As only one theory can be contained in a single paragraph, the court must construe the pleading most strongly against the pleader, and determine the theory from its prominent and leading allegations. *Cleveland, etc., R. Co.* v. *Dugan,* 18 Ind. App. 435; *Dull* v. *Cleveland, etc., R. Co.,* 21 Ind. App. 571; *Pittsburgh, etc., R. Co.* v. *Sullivan,* 141 Ind. 83, 27 L. R. A. 840; *Batman* v. *Snoddy,* 132 Ind. 480.

The complaint can not have the double theory of asking damages on account of delay and inconvenience caused by appellee's failure to get passage upon the train she attempted to enter, and having to wait for another train which went a few hours later, and also to recover damages for personal injuries caused by fright, resulting in nervous prostration and permanent impairment of health. These two theories are inconsistent, and rest upon entirely different reasons. It is not only apparent from the prominent and leading allegations of the complaint that the pleader bottomed it upon the latter theory, but counsel for appellee concede in their brief that that is the theory, and they ground their entire argument thereon. So we have this anomalous question presented by the complaint: Will an action lie for damages for fright, resulting in nervous prostration and permanent impairment of health, when such fright does not arise from impending or apparent danger to the party demanding damages, but from impending, apparent and possible danger or peril to another? Of course, this implies negligence on the part of the party causing the

fright. If the above inquiry can be answered in the affirmative, then the complaint states a cause of action, but if it must be answered in the negative, the complaint is fatally defective, and the demurrer thereto should have been sustained.

Appellant's learned counsel urge and argue with much force and strong reason that the fright to appellee was not the proximate result of any negligence on the part of appellant, and, even if it were, there could be no recovery, because the nervous prostration and permanent impairment of health, alleged to have resulted from the fright, was not the proximate result of any negligence on the part of appellant, and because public policy forbids a recovery in such case. The complaint does not pretend to base appellee's right to recover upon any negligence toward her. She was not on the car, nor upon the steps of the car, but upon the station platform, waiting to enter the car, when the door was opened. · While in that position, before any part of her person came in contact with the car, the train started. She was not frightened because the train started before she got on, but because her daughter was in "imminent danger of being drawn under the wheels of said moving train, and mangled and killed before her eyes; that plaintiff saw the danger of her said daughter, * * * and was greatly terrified and frightened," etc. It is nowhere averred that the daughter was on the car, or on the steps thereof, and as to how she was "dragged upon the platform," etc., is left to mere conjecture. Whether she had hold of the hand-railing, or some other part of the car, is not shown by the complaint, but it is evident she could not be "dragged along the platform" unless some part of her person or clothing came in contact with the car.

The general rule of law is that where a party relies upon negligence as a ground for the recovery of damages, such negligence must be the proximate cause of such damages, and there must not be any intervening independent human

Cleveland, etc., R. Co. *v.* Stewart.

agency. Or, to state the rule differently, there can be no actionable negligence unless the injury complained of is proximately caused by the violation of a duty to the person injured. *Cleveland, etc., R. Co.* v. *Stephenson,* 139 Ind. 641; *Faris* v. *Hoberg,* 134 Ind. 269; *Parker* v. *Pennsylvania Co.,* 134 Ind. 673, 23 L. R. A. 552.

The complaint fails to show any negligence on the part of the appellant toward the appellee that caused her injury or fright. The appellee was not frightened because appellant's servants did not hold the train until she could enter the car, but because of the train starting before any of the party had entered. The proposition is not disputed that appellant did not owe the appellee any duty to hold the train till her daughter got on. Such duty, if it owed it to any one, was to the daughter herself. It certainly owed appellee no duty to keep her from becoming frightened at what her daughter did. If the latter placed herself in peril, appellant was not responsible therefor, unless such peril was brought about by the negligence of the appellant, or by some breach of duty which it owed to the daughter; and, if there was such negligence or breach of duty, the right of action would be in the daughter, and not in the appellee. The proposition now under consideration is tersely and plainly stated in *Bank of Rome* v. *Matt,* 17 Wend. 554, as follows: "The law can not, in such cases, look beyond the proximate mischief resulting to a vested right, and do more than redress the mischief, at the suit of the person immediately wronged." The case from which this quotation is taken is cited with approval in *State* v. *Harris,* 89 Ind. 363, 46 Am. Rep. 169, where other authorities are collected and discussed, and to which we refer without quoting.

In *Hoosier Stone Co.* v. *Louisville, etc., R. Co.,* 131 Ind. 575, on p. 580, the court said: "As the duty violated was one owing directly to the appellant, there was an actionable wrong, and the right of action was in the party to whom the duty was owing."

Another proposition for which appellant's counsel contend is that there can be no recovery for the effect of mere fright, unaccompanied by injury, other than that caused by fright. The injury for which appellee is seeking to recover is nervous prostration, etc., resulting from fright. "Nervous prostration" is largely a mental, and not a physical condition. No pretense is here made that any immediate physical injury resulted to appellee on account of the alleged negligence of appellant, but that her injury came from nervous prostration and permanent impairment of health, caused by fright. In *Mitchell* v. *Rochester R. Co.*, 151 N. Y. 107, 34 L. R. A. 781, it was held that no recovery could be had for injuries resulting from fright caused by the negligence of the defendant, and although a miscarriage resulted from the fright caused by the defendant's negligence, such negligence was not a proximate cause thereof. In that case, appellant was standing upon a cross-walk waiting an opportunity to board one of appellee's cars, which had stopped upon the street at that point. While standing there, and just as she was about to step upon the car, a horse-car of the appellee's came down the street. As the team drawing the car drew near, it turned to the right, and came so close to appellant that she stood between the horses' heads when they were stopped. She testified that from fright and excitement she became unconscious, and that the result was a miscarriage, and consequent illness. In deciding the case, the reasoning of the court is so cogent and sound that we quote at length from the opinion. It was said: "While the authorities are not harmonious upon this question, we think the most reliable and better considered cases, as well as public policy, fully justify us in holding that the plaintiff can not recover for injuries occasioned by fright, as there was no immediate personal injury. *Lehman* v. *Brooklyn City R. Co.*, 47 Hun 355; *Commissioners* v. *Coultas*, L. R. 13 App. Cas. 222; *Ewing* v. *Pittsburgh, etc., R. Co.*, 147 Pa. St. 40, 23 Atl. 340, 14 L.

R. A. 666. The learned counsel for the respondent in his brief very properly stated that 'the consensus of opinion would seem to be that no recovery can be had for mere fright,' as will be readily seen by an examination of the following additional authorities. *Haile* v. *Texas, etc., R. Co.,* 60 Fed. 557, 9 C. C. A. 134, 23 L. R. A. 774; *Joch* v. *Dankwardt,* 85 Ill. 331; *Canning* v. *Williamstown,* 1 Cush. 451; *Western Union Tel. Co.* v. *Wood,* 57 Fed. 471, 6 C. C. A. 432, 21 L. R. A. 706; *Renner* v. *Canfield,* 36 Minn. 90, 30 N. W. 435; *Allsop* v. *Allsop,* 5 Hurl. & N. (N. S.) 534; *Johnson* v. *Wells, etc., Co.,* 6 Nev. 224; *Wyman* v. *Leavitt,* 71 Me. 227. If it be admitted that no recovery can be had for fright occasioned by the negligence of another, it is somewhat difficult to understand how a defendant would be liable for its consequences. Assuming that fright can not form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright or the extent of the damages. The right of action must still depend upon the question whether a recovery may be had for fright. If it can, then an action may be maintained, however slight the injury. If not, then there can be no recovery, no matter how grave or serious the consequences. Therefore, the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it. If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigation in cases where the injury complained of may be easily feigned without detection, and where the damages must rest upon mere conjecture or speculation. The difficulty which often exists in cases of alleged physical injury, in determining whether they exist, and if so, whether they were caused by

the negligent act of the defendant, would not only be greatly increased, but a wide field would be opened for fictitious or speculative claims.    To establish such a doctrine would be contrary to principles of public policy.    Moreover, it can not be properly said that the plaintiff's miscarriage was the proximate result of the defendant's negligence. * * * The injuries to the plaintiff were plainly the result of an accidental or unusual combination of circumstances, which could not have been reasonably anticipated, and over which the defendant had no control, and, hence, her damages were too remote to justify a recovery in this action. These considerations lead to the conclusion that no recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury."

In *Ewing* v. *Pittsburgh, etc., R. Co.*, 147 Pa. St. 40, 23 Atl. 340, 14 L. R. A. 666, it is said: "If mere fright, unaccompanied with bodily injury, is a cause of action, the scope of what are known as accident cases will be greatly enlarged; for, in every case of a collision on a railroad, the passengers, although they may have sustained no bodily harm, will have a cause of action against the company for the fright to which they have been subjected.    This is a step beyond any decision of any legal tribunal of which we have knowledge. * * * But it owed her no duty to protect her from fright, nor had it any reason to anticipate that the result of a collision on its road would so operate on the mind of a person who witnessed it, but who sustained no bodily injury thereby, as to produce such nervous excitement and distress as to result in permanent injury; and, if the injury was one not likely to result from the collision, and one which the company could not have reasonably foreseen, then the accident was not the proximate cause.    The rule on this subject is as follows: 'In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence, such a

consequence as, under the surrounding circumstances of the case, might and ought to have been seen by the wrongdoer as likely to flow from his act.' *Pittsburgh, etc., R. Co.* v. *Taylor,* 104 Pa. St. 306; *West Mahanoy Tp.* v. *Watson,* 112 Pa. St. 574, 3 Atl. 866. Tested by this rule, we regard the injury as too remote."

In *Haile's Curator* v. *Texas, etc., R. Co.,* 60 Fed. 557, 9 C. C. A. 134, 23 L. R. A. 774, it was held that where a passenger was made insane by the negligence of the railroad company, she could not recover therefor. The opinion is a strong one, and we quote from it as follows: "It is well settled that the damages sustained by a wrongful act must be the natural result of the act—such a consequence as, in the ordinary course of things, would flow from it. As expressed by some of the authorities, 'proximate damages are those that are the ordinary and natural results of the negligence, such as are usual, and might therefore have been expected.' 'Remote damages are such as are the result of an accidental or unusual combination of circumstances, which would not be reasonably anticipated, and over which the negligent party had no control.' *Ewing* v. *Pittsburgh, etc., R. Co.,* 147 Pa. St. 40, 23 Atl. 340, 14 L. R. A. 666; *Commissioners* v. *Coultas,* L. R. 13 App. Cas. 222; Cooley on Torts, 69; 2 Thomp. on Neg. 1083. * * * While the defendant, as a common carrier, had reason to anticipate that an accident would cause physical injury, and would produce fright and excitement, it had no reason to anticipate that the latter would result in permanent injury, as a disease of the mind, or any other disease that might be caused by excitement, exposure, and hardship sometimes incident to travel. If the disease was not likely to result from the accident, and was not one which the defendant could have reasonably foreseen, in the light of the attending circumstances, then the accident was not the proximate cause. The defendant had no reason to anticipate that the result of an accident on its road would so operate on Haile's mind as to

Cleveland, etc., R. Co. *v.* Stewart.

produce disease,—the disease of insanity,—any more than that the exposure and hardships he suffered would produce grippe, pneumonia, or any other disease. He sustained no bodily injury by the accident, so far as the petition shows; but it caused a shock and an excitement, which, under his peculiar mental and physical condition at the time, resulted in his insanity. The defendant owed him the duty to carry him safely,—not to injure his person by force or violence. It owed him no duty to protect him from fright, excitement, or from any hardship that he might subsequently suffer because of the unfortunate accident. The case of *Scheffer* v. *Washington City, etc., R. Co.*, 105 U. S. 249, was where, by reason of a collision of a railway train, a passenger was injured; and, becoming thereby disordered in mind and body, he, some eight months thereafter, committed suicide. The court held, in a suit by his personal representative against the railroad company, that, as his own act was the proximate cause of his death, there could be no recovery." *Commissioners* v. *Coultas*, L. R. 13 App. Cas. 222, is in point. In that case the respondents were husband and wife. They were driving over the appellant's track, at a level crossing, where a gate was maintained. The right of action was based upon the alleged negligence of appellant's servant in charge of the gate, whereby they were placed in imminent peril of being killed by a passing train. By reason of these facts, the wife received a severe shock, and suffered personal injuries, and still suffers from delicate health and impaired memory. The gateman beckoned them to cross, and, in doing so, they came near colliding with a rapidly moving train. The negligence relied upon was the action of the gateman in signaling them to cross. It was urged by appellant that the damage resulting from shock or fright, without impact, was too remote to sustain the action. The privy council took this view of the law, and held that there could be no recovery, for the reason that

such injury was not the natural and ordinary consequence, and for the further reason that to permit a recovery in such case would, in effect, be to allow a recovery for mental injury.

In the case of *Washington, etc., R. Co.* v. *Dashiell* (D. C. App.), 24 Wash. Law 40, it was held that while mental pain and suffering attendant upon a physical injury as a natural consequence might be considered as an element of damages in awarding compensation for the injury, yet a nervous shock and its consequences could not furnish any independent ground for awarding damages. In the decision of that case, we find this language: "The jury were instructed that, in addition to damages for pain and suffering [growing out of the bodily injury], they could award damages for any impairment of the plaintiff's nervous system, if such nervous impairment was produced as a direct result of the nervous shock received by her on the occasion of the collision. Thus making the nervous shock and the consequences thereof a separate and independent ground for awarding damages. This is certainly a most indefinite element to be considered by the jury, and one that is most difficult, if not quite impossible, to regulate by any reasonable standard for assessing damages. * * * To attempt to furnish a legal remedy in such case would open the door to the widest speculation. Without for a moment intimating that simulation existed in this case, yet the nature of such claim would render it easy of simulation; and if not simulated, the temptation would be strong to exaggeration, and the assigning of one cause for another in the production of the morbid state of the nervous sensibilities; and all this, though it might be without real foundation, would be most difficult to disprove by the party sought to be charged. Such claims for compensation are subject to all the objections to remote and speculative damages."

The recent case of *Kalen* v. *Terre Haute, etc., R. Co.,*

Cleveland, etc., R. Co. v. Stewart.

18 Ind. App. 202, is directly in point. There, appellant was driving across appellee's track, in the city of Terre Haute, and as she was crossing it the gateman in appellee's employ let down the gates over her horse, by which it was frightened, and ran violently down the street. In its flight it came in contact with another vehicle drawn by a horse, and she came near being thrown to the ground. She did not receive any immediate physical injury, but averred in her complaint that she received a severe nervous shock, and was greatly frightened and her life put in imminent peril, danger, and jeopardy, and further she has suffered great mental pain and anxiety, etc. In an exhaustive opinion by Black, J., in which many authorities are collected, it was held that the complaint did not state a cause of action, and it was said: "But not every injurious effect of wrong can form the basis of damages. Many ill consequences follow from wrongs as proximate effects for which the law can not afford redress, because of the inadequacy of the methods and means of courts to reach just and adequate results with sufficient certainty. * * * It would seem that such injuries are among those which courts can not remedy by means of any practicable methods at their command which can be applied generally so as to secure justice to both the plaintiffs and defendants and so as best to subserve the interest of the community, whose instruments the courts are in the administration of justice. Such claims for redress seem to be outside the wise policy of the law."

In the case of *Braun* v. *Craven*, 175 Ill. 401, 51 N. E. 657, 42 L. R. A. 199, it was held that damages could not be recovered for a severe nervous shock resulting in St. Vitus' dance, and the decision was based upon two grounds: (1) That such damages are too remote, and (2) that it was against public policy.

In the case of *Gulf*, etc., *R. Co.* v. *Trott*, 86 Tex. 412, 25 S. W. 419, the following question was certified to the supreme court: "Can actual damages be recovered for

mental suffering when there is no physical injury, no injury to property, nor other element of actual damages?" It was answered in the negative.

In *Spohn* v. *Missouri Pacific R. Co.*, 116 Mo. 617, 22 S. W. 690, it was held that there could be no recovery for mental anguish or fright without bodily injury.

In *Spade* v. *Lynn, etc., R. Co.*, 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 513, it was said: "We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without."

It is remarkable that no precedent has been cited by appellee's learned counsel, and we confess our inability to find any, of an action similar to the present having been successfully maintained; and, in the face of the authorities, we are not willing to establish such a precedent by an affirmance of the judgment. We mean by this to say that we have not been cited to any case, nor have we been able, after the most diligent research, to find any case holding that fright to one person occasioned by imminent danger and peril to another, can be made the basis of an action for damages by the former.

In the case of *Atchison, etc., R. Co.* v. *McGinnis*, 46 Kan. 109, 26 Pac. 453, the court said: "A person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he had been placed in a perilous position. Nor is mere fright the subject of damages. Fright must be accompanied by some actual injury caused thereby, and traceable directly thereto, to be the subject of damages. Mere fright, unaccompanied by any injury resulting therefrom, can not be the subject of damages." Citing *Commissioners* v. *Coultas*, L. R. 13 App. Cas. 222.

Suppose, for illustration, that appellee was prosecuting this action to recover for fright occasioned by apparent and impending peril to herself, and yet no personal injury resulted from such peril. It is clear that, under the authorities, she could not recover. Her case is greatly weakened here because she bases her right of action upon fright occasioned by apparent and impending peril to her daughter. Witnessing an injury, or a threatened injury, to another, even though it causes fright, is not in itself an injury to the person witnessing it. There must be some direct physical connection between the cause and effect. The fact that one is frightened by observing another in danger, and that such fright brings on nervous prostration, gives no cause of action to the former. This point is aptly illustrated by the following quotation from Benjamin Franklin: "For want of a nail the shoe was lost, for want of a shoe the horse was lost, for want of a horse the rider was lost, being overtaken and killed by the enemy." Could any one possessed of reason and judgment contend that the personal representative of the rider could maintain an action against the blacksmith for the death of the rider, even though it could be shown that the nail had been negligently left out by the blacksmith who had shod the horse? Such damages would indeed be remote, but no more so than in the case made here by the complaint. Other illustrations will make plainer the question under consideration. Suppose a person is standing upon a street crossing in a city, and observes another approaching, attempting to cross a railroad track in front of a train running at a high rate of speed in violation of an ordinance, and while so doing encounters great peril, by reason of which the former should become greatly frightened and nervously shocked, would such facts constitute a cause of action for damages resulting from such fright? Again, suppose there is a collision between two trains, but a passenger, though greatly frightened, does not receive any bodily injury. In such case could there be a

recovery for the fright or its consequences? Many apt illustrations might be given of the question here involved, but it is useless to do so, for those given, in view of the authorities, clearly demonstrate that in such cases there can be no recovery, for the reason that such damages are too remote and speculative. Our ultimate conclusion is that the amended complaint upon its apparent and conceded theory does not state a cause of action, and it was error to overrule the demurrer to it. This conclusion makes it unnecessary to notice other questions raised and discussed.

The judgment is reversed, and the court below is directed to sustain appellant's demurrer to the amended complaint.