**ORKIN EXTERMINATING COMPANY, INC., Defendant-Appellant,**

v.

**Edna WALTERS, Plaintiff-Appellee.**

**No. 3–583A160.**

Court of Appeals of Indiana, Third District.

July 24, 1984.

Anthony S. Benton, John C. Duffey, Stuart & Branigin, Lafayette, for defendant-appellant..

Patricia L. Engels, Lake Village, for plaintiff-appellee.

GARRARD, Judge.

In March 1976 Edna Walters noticed flying insects in her house and contacted Orkin Exterminating Co. (Orkin). Orkin's pest control department first inspected Walters' home. They discovered active infestations of cockroaches, silverfish, mice, carpet beetles and termites. They treated for the above pests except termites and suggested that Walters contact Orkin's termite department which she subsequently did. Upon subsequent inspection by Orkin's termite department and an explanation of Orkin's termite treatment, Walters signed a "Subterranean Termite Agreement" which provided for an initial treatment for $341 and Orkin's "Continuous Protection Guarantee" for an annual fee of $44.

On April 16, 1976 Orkin treated Walters' house for termites. On the same day Walters received the "Lifetime Re-treatment Guarantee" which guaranteed additional treatments at no cost if termites reappeared during the guarantee period, expressly limited Orkin's liability to re-treatment only, and contained an express waiver by the buyer for termite damage to the structure or its contents.

Later, Walters discovered termite damage and Orkin re-treated her house in 1979 and 1980. After termite damage continued, Walters brought this claim for negligent breach of contract against Orkin in November 1980.[1] After a bench trial, the trial court entered judgment for Walters and against Orkin. The court awarded $40,000 for damage to the house, $6,000 for damage to personal property and $8,000 for "discomfort, inconvenience, mental stress and aggravation" for a total of $54,000. Orkin subsequently perfected this appeal.

■ Orkin requested special findings of fact under Indiana Rules of Procedure, Trial Rule 52(A). The scope of review for special findings is well settled: The appellate court may not affirm the trial court's judgment on any ground which the evidence supports but must determine if the specific findings are adequate to support the trial court's decision. *Shrum v. Dalton* (1982), Ind.App., 442 N.E.2d 366, 372.

---

1. On December 15, 1980, Walters' house suffered extensive fire damage. The exposed interior studs and floorboards revealed widespread termite damage.

The trial court made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

"1. This Court has jurisdiction of the subject matter and the parties in this matter.

2. A contract was entered into between the parties on or about March 11, 1976, establishing duties and rights of the parties with regard to treatment and protection of plaintiff's house from said termites.

3. The Orkin Retail Installment Contract, Number 41–945–492, was attached to the inside back cover of a printed booklet.

4. Said contract between the parties was continuous through annual renewal from March 11, 1976 through December 31, 1980.

5. During such time, Plaintiff did substantially comply with the terms of said contract.

6. Plaintiff did understand that her house would be protected continuously through annual renewal from termite damage by Defendants.

7. Defendant completed initial treatment of the house on April 16, 1976. At that time, no assessment of termite damages was made, though Defendant did note such locations by "X" on inspection sheet.

8. Defendant retreated said house on June 9, 1979, and again on September 20, 1980.

9. Defendant did fail to comply with such duties to protect with regard to:

(a) Proper inspection to determine the most effective treatment method;

(b) proper treatment as directed by State of Indiana Termite Control Enforcement Policy;

(c) proper application of Orkin termiticide as directed by the label instructions for slab on ground construction.

10. Fire to said house occurred in December, 1980.

11. Inspection of said house and testimony disclosed extensive infestation of said house which resulted in damage to said house and the entire house is generally in bad condition, said fire permitting inspection of load bearing timber.

12. Defendant's failure to properly inspect and treat for protection from said termites did not eliminate termites from said property, and was the proximate cause of the damage to property sustained by Plaintiff from termite damage.

## CONCLUSION OF LAW

1. Surrounding circumstances are here considered in determining the intention of the parties to the contract which will advance its beneficial purpose.

2. Ambiguous language in a contract shall be construed most strongly against the person who prepares it.

3. The Court shall consider the nature of the agreement, together with all the facts and circumstances leading to the execution of the contract, the relation of the parties, the nature and situation of the subject matter and the apparent purpose of making the contract.

4. Defendant exterminator who undertakes to accomplish such protection, has a duty to do everything according to custom of the trade requirements of State to accomplish that protection and in methods set forth as proper.

5. Where the damage results from breach of duty and would not have occurred but for Defendant's negligent performance, Defendant's negligence constitutes malfeasance and Plaintiff may sue in tort.

6. Where Defendant performs in such a defective way as to amount to tortious malfeasance, Plaintiff's damages are not limited to contract terms.

7. Defendant's performance being defective, amounts to tortious malfeasance, then Defendant is liable for damages in tort.

8. Where parties enter into a contract for termite control and protection whereby buyer Plaintiff agrees to pay money

and seller Defendant agrees to control termites and prevent termite damage to property and where Defendant's defective performance under the contract amounts to tortious malfeasance, then Defendant is liable to Plaintiff for damage done to Plaintiff's property as a direct result of Defendant's malfeasance, namely damage to home and personalty.

9. Measure of damages for injury to real estate is the difference between the reasonable market value of the premises prior to and after the injury, as well as the reasonable cost of restoring the property to its former condition.

10. Time of such damage being sufficiently known, then interest is justified from date of such damage."

The trial court concluded that Orkin's breach of duty, i.e., its negligent performance under the contract, constituted "tortious malfeasance," thus allowing Walters to recover damages in tort to her house and personalty thereby avoiding the effect of the contract terms limiting Orkin's liability to re-treatment.

"Malfeasance" is defined in *Black's Law Dictionary*, 4th Ed. as:

"Evil doing: ill conduct; the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which person ought not to do at all or the unjust performance of some act which the party had no right or which he had contracted not to do."

■ It is clear from the record and the trial court's findings of fact that Orkin did not commit a wrongful or unlawful act in treating Walters' home. At most, the trial court found that Orkin negligently treated Walters' home. Negligence does not constitute malfeasance. More properly, the trial court should have concluded from its findings that Orkin's negligent performance constituted "misfeasance."[2] Under the standard of review for special findings of fact, *Shrum, supra,* we must simply

reverse the trial court's judgment due to inadequate findings to support a decision based on malfeasance. However, apart from the distinction between malfeasance and misfeasance, we find a reversal is mandated in this case.

■■ Indiana law recognizes that Walters had an option of suing in tort or in contract for the negligent performance of a contractual duty. *Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 79 N.E. 503; *Wilson v. Palmer* (1983), Ind.App., 452 N.E.2d 426. Walters' suit based in tort does not change the fact that Orkin's duty to Walters is based on the contract. Moreover, bringing a suit in tort does not allow Walters to avoid the limitation of liability clause in the contract. In *Orkin Exterminating Co. of South Florida, Inc. v. Clark* (Fla.Dist.Ct.App.1971), 253 So.2d 884 the court rejected a similar approach in the context of a liquidated damages clause. It quoted with approval the court in *Better Food Markets, Inc. v. American Dist. Tel. Co.* (1953), 40 Cal.2d 170, 253 P.2d 10, 15–16, 42 A.L.R.2d 580 which stated:

"The plaintiff seeks to avoid the effect of the liquidation clause on the ground that it has no application to a tort action. However, the plaintiff makes no claim that a duty was owed to it outside of that created by the contract, and no breach of duty was alleged other than a failure to render the contracted for service. Although an action in tort may sometimes be brought for the negligent breach of a contractual duty, *Jones v. Kelly,* 208 Cal. 251, 280 P. 942, still the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created that duty. In the present case the duty created by the contract was one for which liability for a breach thereunder was fixed, and whether the action is brought in tort or in contract the nature of the duty remains the same. The plaintiff cites no authority and none has been discovered

---

2. "A misdeed or trespass. The improper performance of some act which a man may lawfully do." *Black's Law Dictionary,* 4th Ed.

to the effect that where the breach of a duty created only by contract is a negligent one the application of a valid clause for liquidated damages may be avoided by bringing an action in tort."

In *General Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407, the plaintiff claimed that the defendant negligently performed under a contract, thereby breaching it. The contract contained a limitation of liability clause limiting damages for negligence to $250. In upholding the grant of a motion for summary judgment, the court distinguished the clause from the typical liquidated damages clause and stated that its obvious purpose was more in the nature of an exculpatory clause. The court then noted that:

"Indiana, likewise, recognizes exculpatory clauses. Parties are permitted to make such contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts. However, exceptions exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public. *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144; *LaFrenz v. Lake County Fair Board* (1977), 172 Ind.App. 389, 360 N.E.2d 605."

*Id.* at 411.

The trial court made no finding of unequal bargaining power, unconscionability or that the transaction with Walters affected the public interest as do utilities, carriers or other businesses thought to be suitable for regulation.

Finally, in a case involving an almost identical fact situation, the court in *Orkin Exterminating Co., Inc. v. Stevens* (1973),

130 Ga.App. 363, 203 S.E.2d 587 analyzed the case on a theory of negligent breach of contract.[3] The plaintiff had suffered termite damage after Orkin's initial treatment and subsequent re-treatment. The parties had contracted for the same "Lifetime Control" guarantee in a contract containing the same limitation of liability clause at issue here. The appellate court noted that the plaintiff's case failed on this theory:

"... for the reason that the same contract which raises Orkin's duty to him limits that duty to retreatment, and Stevens has not contended that Orkin failed to retreat the premises when requested. The description on the original contract of the type guaranty to be issued, and the guaranty itself, make clear that Orkin in no way assumed responsibility under that type guaranty as opposed to other Orkin guaranties for any structural damage caused by termites if its treatments should be unsuccessful. Because Orkin as a private citizen owed plaintiff no duty except that assumed by the contract, there is no impediment to its limiting its contract liability by such a provision, and such limitations are usually valid. 5 Corbin 385 Section 1068 supra. Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish [citation omitted] and the written contract defines the full extent of their rights and duties. [citation omitted]" *Id.* at 592.

We agree and hold that Walters cannot avoid the limitation of liability clause by electing to sue in tort.

Walters maintains that the limitation of liability clause may be avoided due to the ambiguous nature of the contract. She asserts that her understanding at the time she signed the contract, based on Orkin's accompanying literature, was that she would be protected from termites for as long as she renewed the contract. Therefore, if the contract is ambiguous she as-

---

**3.** The suit was brought only in tort. The court found no cause of action because the case involved only the non-performance of a contractual duty. However, the court in dicta analyzed the case under contract theory.

serts the court may resort to rules of contract construction or extrinsic circumstances to give effect to the parties' reasonable expectations. *Pearson v. First National Bank of Martinsville* (1980), Ind.App., 408 N.E.2d 166. In addition, she asks this court to weigh all the facts and circumstances prior to execution of the contract and consider the nature of the agreement, the relation of the parties, the nature and situation of the subject matter and the apparent purpose of making the contract. *Shahan v. Brinegar* (1979), 181 Ind.App. 39, 390 N.E.2d 1036.

■ A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation. *Ft. Wayne Cablevision v. Indiana & Michigan Electric Co.* (1983), Ind.App., 443 N.E.2d 863. If the parties' intention is discernible from the written contract and the unambiguous terms of the contract are conclusive regarding the parties' intentions, absent claims of a defect in the contract's formation, then the court must give it effect. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838.

Walters asserts that extrinsic evidence in the form of a printed brochure, entitled "Subterranean termite control proposal," in the back of which the termite treatment contract was stapled, was correctly admitted into evidence and considered by the trial court. Walters argues that the contract's ambiguity is clear when viewed with the attached termite proposal. This argument must logically fail. Walters attempts to use the very extrinsic evidence the trial court admitted due to the contract's alleged ambiguity as a means of proving the contract was ambiguous in the first place.

■ When a matter is expressly covered by a written instrument, the unambiguous provisions of that instrument control and the intent of the parties will be determined from within the "four corners" of the instrument. *Orme v. Estate of Kruwell* (1983), Ind.App., 453 N.E.2d 355, *transfer den.; Hauck v. Second National*

*Bank of Richmond* (1972), 153 Ind.App. 245, 286 N.E.2d 852. After review of the instrument, if the court cannot find the contract ambiguous, extrinsic evidence may not be admitted to explain the instrument's meaning. *Hauck, supra* at 861. Therefore if we find the contract unambiguous, the trial court improperly admitted extrinsic evidence to explain Walters' "understanding" of the contract.

■ In addition Walters maintains that the contract is ambiguous because two different guarantees are printed in capital letters on the back of the contract. She asserts there is no way to differentiate between them and they are not labeled to correspond to the front side of the contract where the various types of guarantees are chosen.

On the front side of the contract it states: "Orkin is to issue the type of Guarantee as checked below: Lifetime Repair (LR), Lifetime Re-treatment (LC), Pretreat (PR) and None."[4] Directly beneath these choices the contract reads: "The type guarantee checked above will be issued to the Buyer upon completion of initial treatment."

Since Walters did not agree to either no treatment, or pretreatment, her clear choice of guarantees was between "Lifetime Repair (LR)" and "Lifetime Re-treatment (LC)" as stated on the front of the contract. On the reverse side of the contract two guarantees are printed in capital letters. They are labeled "Special Total Protection Lifetime Subterranean Termite Guarantee" and "Subterranean Termite Re-treatment Guarantee." The former describes the repair guarantee in unambiguous language. The latter clearly limits Orkin's liability to re-treatment only and in it the buyer expressly waives any claim for damages to the structure or contents of the home due to termite damage.

Moreover, on the day Walters received the initial treatment she was given a document clearly labeled "Re-treatment Guarantee" and type "LC." It has a cross-ref-

---

**4.** Walters' contract has "Lifetime Re-treatment (LC)" checked.

erence to Walters' treatment contract number. It states in clear and unambiguous language that Orkin guarantees to re-treat the premises at no extra cost if an infestation of treated areas is discovered during the term of the guarantee. It repeats that Orkin's liability under the guarantee is limited to re-treatment only. In addition, it refers to the contract and repeats that in it the buyer expressly waived and released Orkin from liability for damages to the structure or its contents caused by termites. Walters testified that she received and read this guarantee and understood from it that she was purchasing the initial treatment and the re-treatment guarantee.

We cannot say that a reasonable person would find the contract subject to more than one interpretation. We find the contract clear and unambiguous. Therefore, the trial court erred in concluding that the contract was ambiguous and in admitting extrinsic evidence. The limitation of liability clause may not be avoided by means of improperly admitted extrinsic evidence.

■ However, as noted previously, Orkin requested special findings of fact under TR 52(A). The trial court made no specific findings of fact regarding ambiguity in the contract. The only reference in its findings which could relate to ambiguity is the trial court's finding that "Plaintiff did understand that her house would be protected continuously through annual renewal from termite damage by Defendants." This finding is not adequate to support the trial court's conclusion that the contract was ambiguous. *Shrum, supra,* and impliedly is based on improperly admitted extrinsic evidence.

We find the trial court erred in finding for Walters and in awarding damages against Orkin for termite damage to Walters' house and personal property. Consequently we reverse the trial court's judgment and direct the entry of judgment for Orkin.

■ The trial court also awarded $8,000 to Walters for negligent infliction of mental distress. It is well settled that Indiana law requires that a claimant suffer a physical injury resulting in emotional distress prior to recovering damages. *Kroger Co. v. Beck* (1978), 176 Ind.App. 202, 375 N.E.2d 640 (the "impact" rule). As Judge Shields noted in *Little v. Williamson* (1982), Ind.App., 441 N.E.2d 974, 975, *transfer den.:*

"[W]e find no Indiana cases excepting negligent infliction of emotional distress actions from compliance with the impact rule. Indeed, our cases consistently hold negligent infliction of emotional distress, absent contemporaneous physical injury, is not compensable. *See Boston v. Chesapeake & O. Ry.* (1945), 223 Ind. 425, 61 N.E.2d 326; *Baker v. American States Ins. Co.* [(1981) Ind.App., 428 N.E.2d 1342]; *Charlie Stuart Oldsmobile, Inc. v. Smith* [(1976) 171 Ind.App. 315, 357 N.E.2d 247]; *Cleveland, C.C. & St. L. Ry. v. Stewart* (1900), 24 Ind.App. 374, 56 N.E. 917; *Kalen v. Terre Haute & I. R.R.* (1897), 18 Ind.App. 202, 47 N.E. 694."

Walters requests that we overrule existing precedent and reject the impact rule for negligent infliction of emotional distress.[5] We decline the offer. We agree with Judge Shields and believe any action of this kind should come from our legislature or Supreme Court.

Walters admits she suffered no physical injury as a result of mental distress. Consequently, we hold that the trial court erred in awarding damages to Walters for "discomfort, inconvenience, mental stress and aggravation" i.e., negligent infliction of emotional distress, with no finding of a physical injury. We reverse the trial court's award of damages for mental distress as contrary to law.

Judgment reversed.

STATON, P.J., and HOFFMAN, J., concur.

---

5. For background and discussion of one proposal, see Note, *Recovery for Negligent Infliction of* *Emotional Distress: Changing the Impact Rule in Indiana,* 54 Ind.L.J. 467 (1979).