Herman JOHNSON and Joyce Johnson

v.

**ORKIN EXTERMINATING COMPANY, INC.**

**Civ. A. No. 89–5241.**

United States District Court, E.D. Louisiana.

Aug. 31, 1990.

William Clay McGehee, John H. Wells, New Orleans, La., for plaintiffs.

Andrew Martin Edwards, II, James B. Irwin, V, Quentin F. Urquhart, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for defendant.

ROBERT F. COLLINS, District Judge.

Defendant, Orkin Exterminating Company, Inc. (hereinafter "Orkin"), moves this Court for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P., restricting its obligation for any termite damage to the home of plaintiffs, Herman Johnson and Joyce Johnson, to re-treatment of said property pursuant to the Subterranean Termite Agreement (hereinafter "Agreement") entered into by Orkin and the Johnsons. This motion is GRANTED.[1]

BACKGROUND

On July 12, 1988, Orkin and Herman Johnson entered into the Agreement covering property located at 4560 Lennox Boulevard in Algiers, Louisiana. Under the provisions of the Agreement, Orkin issued to

Mr. Johnson a "Renewable Reticulitermes–Subterranean Termite Re-treatment (hereinafter "GT") Guarantee. The terms of the GT Guarantee read in full as follows:

**RENEWABLE RETICULITERMES–SUBTERRANEAN TERMITE RE-TREATMENT GUARANTEE**

Orkin will issue me a Re–Treatment Guarantee which obligates **ORKIN**, subject to the coverage, limitations and restrictions set forth in this Agreement and in the Inspection/Treating Report, at no extra cost to me, to apply any necessary additional treatment to my structure if an infestation of Reticulitermes–Subterranean Termites is found during the effective period of my Guarantee. I understand that ORKIN's obligation under this Guarantee is limited to re-treatment only. I expressly release ORKIN from any obligations under this Guarantee to repair any damages to my structure or its contents caused by an infestation of Subterranean Termites, except as may be provided in paragraphs IA, IB and IIA below. My Guarantee will remain effective for up to the lifetime of the treated premises provided that I pay the annual renewal payment on or before each anniversary date of this Agreement, and that I comply with the other applicable terms and conditions of this Agreement.

I understand that I may request and receive from Orkin a replacement of the termite chemical barrier no more frequently than every seven years at OR-KIN's then current price to treat my structure.

The contract further contains the following pertinent language which was referenced under the terms of the GT Guarantee:

**SUBTERRANEAN TERMITE INFESTATION AND DAMAGE COVERAGE AND LIMITATION**

**I. RETICULITERMES–SUBTERRANEAN TERMITES**

---

1. In the event the Court did not grant Orkin's motion restricting its liability to re-treatment, defendant alternatively moved for partial summary judgment prohibiting plaintiffs from recovering non-pecuniary damages in an action for breach of contract. Since the Court herein rules in favor of defendant on the former motion, the Court need not address the issue of non-pecuniary damages.

**A. Pier Construction:** ORKIN shall be responsible only for new damage to visible portions of the foundations, sills, joists, plates and subfloor where active subterranean termite infestation is discovered six (6) months or more after completion of initial treatment, if my structure has been continuously under contract since treatment.

**B. Pretreated Structures:** ORKIN shall be responsible for damage to both slab and pier structures that were treated prior to, or during construction and have been continuously under contract, where active subterranean termite infestation is discovered, except under the conditions as outlined in paragraph 2, below.

**C. Slab Construction:** Due to extreme hazards encountered in existing slab construction and the possibilities of hidden infestation, ORKIN cannot be held responsible for any damage to the structure or its contents caused by subterranean termite activity.

**II. COPTOTERMES–FORMOSAN TERMITES**

ORKIN cannot be held responsible for any damage to the structure or its contents caused by Formosan termite activity. When soil treatment fails to control the Formosan Termites, it is then necessary to fumigate the building or to remove the necessary walls, ceilings, etc., in order to find and destroy existing nests. In this situation, I, the Buyer, will be responsible for the added cost of the additional work.

**A. Exception:** With prevention treatment of structures, Paragraphs IA and IB shall apply.

III. I, the Buyer, agree to indemnify and hold ORKIN harmless against any and all damages and expenses, including court costs and reasonable attorneys fees, incurred or arising from any claim against ORKIN for damage to the structure or its contents except as provided under sections IA and IB of this Agreement.

After entering into this Agreement with the homeowner, Orkin applied the initial termite treatment to the property on July 14, 1988. In performing its treatment, Orkin drilled through a tile floor located in the rear of the home. In conducting this drilling, Orkin's technician chipped the edges on a number of the tiles resulting in some damage thereto. On May 31, 1989, suit was filed by Herman Johnson in the Civil District Court for the Parish of Orleans to recover damages in the amount of $11,632.93 for the alleged cost of replacing the tile floor damaged by Orkin.

In July of 1989, termites were discovered in the garage portion of the property. A claim was made with Orkin for repair of the damages subsequently discovered. This claim was denied by Orkin. When turning down Mr. Johnson's repair claim, Orkin contended that the Johnson property was a "slab" home, and, as such, under the terms of Orkin's contract, it was obligated only for re-treatment of the property and not repair. The claim was further denied on the basis that the damage originated from Formosan termites for which, under the terms of the contract, Orkin was not responsible. On October 19, 1989, plaintiff filed a supplemental and amending petition requesting recovery in the amount of $175,-000.00 for the damage to plaintiff's home, "including living expenses, inconvenience, and mental anguish." The case was thereafter removed to this Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332(a).

DISCUSSION

Contracts have the effect of law on the parties, and courts are bound to give legal effect to those agreements. *Rivercity v. American Can Co.,* 600 F.Supp. 908 (E.D.La.1984); *Brenham v. Southern Pacific Co.,* 328 F.Supp. 119 (W.D.1971); *Louisiana Nat. Leasing Corp. v. Family Pools, Inc.,* 345 So.2d 480 (La.1977). A court will not be concerned with the wisdom or folly of a contract and will not annul or amend it simply to avoid some supposed hardship arising therefrom; its duty is confined strictly to ascertainment of limits of rights and obligations of contracting parties as they have defined them for themselves. La.C.C. art. 1945 (1870);

*Schwarz v. Bourgeois*, 422 So.2d 1176 (La. App. 4th Cir.1982); La.C.C. art. 1983.

■ Under the express and unambiguous terms of the Agreement entered into between the parties, Orkin's liability in the event that termites were discovered was limited to re-treatment only. The property owner expressly released Orkin from any liability to repair damages to the property caused by an infestation of subterranean termites. Any other interpretation of those contract provisions would result in Orkin's liability being extended beyond what was originally contemplated by the parties.

Such an express limitation of liability by a party to a contract, freely entered into between the contracting parties and not producing an absurd result, has been repeatedly upheld by the courts of Louisiana. In *Pothier v. Barber Laboratories*, 227 La. 357, 79 So.2d 481 (1955), the Louisiana Supreme Court was faced with a similar factual situation. In that case, Pothier sued Barber for breach of a termite eradication contract. Pursuant to the original contract entered into between the parties, Barber was obligated to eradicate termites, inspect the premises and treat for re-infestation. The original contract expressly provided that Barber would not be responsible for damage done to the building or its contents by termites. The Court held that it could not ignore the clear condition in the contract that under no circumstances should the termite contractor be responsible for damage done to the building by termites. *Id.* 79 So.2d at 482. Thus, the Court held that Barber owed no obligation to pay for the cost of repair. *Id.* at 483.

In *Alan Abis, Inc. v. Burnes Electronic Security Service, Inc.*, 283 So.2d 822 (La. App. 2nd Cir.1973), an analogous circumstance was presented. Suit was brought for damages due to the allegedly improper and defective installation of a burglar alarm system. The contract executed between the parties specifically limited the liability of the alarm installation company

in the event that loss or damage occurred to 10% of the annual charge or $250.00, whichever was greater. The plaintiff took the position that the limitation of liability provision was null and void as being in contravention of the public policy of the State of Louisiana. The Second Circuit Court of Appeal, however, after engaging in a thorough examination of the issue, concluded that such contract provisions were not null and void, and that there was "no reason why parties may not contract for unequal contingent penalties for the breach of the contract." *Id.* at 826.

A similar limitation of liability provision was upheld in *Haspel v. Rollins Protective Service, Inc.*, 490 So.2d 530 (La.App. 4th Cir.1986). In *Haspel*, suit was brought by a homeowner for damages from a fire which went undetected by a smoke detector that was installed and maintained by the defendant. The installation and service contract clearly limited defendant's liability to 10% of one year's service charge, or $250.00, whichever was greater. In upholding that provision, the Court stated:

> Rollins did not undertake to be an insurer of Haspel or his property. The instant contract expressly stipulated the measure of damages to which Haspel would be entitled upon any breach by Rollins and specifically expressed this contemplation in the exculpatory clause. We find that Rollins' liability is to be restricted in accordance with the contract. *Id.* at 534.

The enforceability of clauses restricting the liability of termite contractors to re-treatment only and not repair have been upheld in other cases. In *Orkin Exterminating Company, Inc. v. Stevens*, 130 Ga. App. 363, 203 S.E.2d 587 (1973), an action was brought to recover for termite damage. The evidence in the case showed that the plaintiff had contracted with Orkin for control of termites in his home and had been issued a "Lifetime Control" (hereinafter "LC") Guarantee.[2] The description of the guarantee stated that Orkin's liabili-

**2.** The "Lifetime Control" Guarantee was the old name for the current GT Guarantee at issue in     this case.

ty was limited to re-treatment and would not encompass responsibility for damages or repairs to the structure or contents. Orkin took the position that it had no liability under its LC Guarantee other than for re-treatment of the property. In considering the validity of this contractual restriction, the Court stated:

> The description on the original contract of the type of guarantee to be issued, and the guarantee itself, make clear that Orkin in no way assumed responsibility under that type of guarantee as opposed to other Orkin guaranties for any structural damage caused by termites if its treatments should be unsuccessful. Because Orkin as a private citizen owed plaintiff no duty except that assumed by the contract, there is no impediment to its limiting its contract liability by such a provision, and such limitations are usually valid. 5 Corbin 385 § 1068, supra. Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and the written contract defines the full extent of their rights and duties. *Id.* [203 S.E.2d] at 592 (citations omitted).

The Court thus concluded that the contract should be enforced and that Orkin was entitled to judgment as a matter of law. *Id.* at 594.

The same result was reached in *Worth v. Orkin Exterminating Company, Inc.*, 142 Ga.App. 59, 234 S.E.2d 802 (1977), wherein suit was brought when termite damage was discovered in the plaintiff's house after he had entered into a contract with Orkin. The terms of the contract limited Orkin's liability to re-inspection and re-treatment as necessary. A motion for summary judgment was filed by Orkin and was granted by the trial court. Relying on *Orkin Exterminating Co. v. Stevens, supra,* the appellate court held that the contract and guarantee made it clear that Orkin did not assume responsibility for structural damages and there was no reason why Orkin should not be allowed to limit its liability under such circumstances. *Id.* 234 S.E.2d at 804.

In *Wilcher v. Orkin Exterminating Company, Inc.*, 145 Ga.App. 551, 244 S.E.2d 101 (1978), an action was brought against Orkin for damages arising from termite infestation. The original contract entered into between the parties expressly limited Orkin's liability in the event of re-infestation to re-treatment of the property and not repair. Orkin filed a motion for summary judgment which was granted by the trial court. On appeal, the court affirmed finding that the plaintiff could not recover since the contract at issue restricted Orkin's liability to re-treatment. *Id.* 244 S.E.2d at 102.

Finally, in *Orkin Exterminating Company, Inc. v. Walters*, 466 N.E.2d 55 (Ind. App.1984), a suit for recovery of termite damage was brought by a homeowner. The plaintiff and Orkin had entered into a "Subterranean Termite Agreement" which provided for initial treatment and Orkin's "Continuous Protection Guarantee" for so long as annual renewal payments were made. In connection with the Agreement, Orkin issued to the plaintiff an LC Guarantee which guaranteed additional treatments at no cost if termites re-appeared during the guarantee period, but which expressly limited Orkin's liability to re-treatment only, and contained an express waiver by the buyer for termite damage to the structure or its contents. After Orkin's initial treatment, termites were discovered and Orkin performed re-treatments. However, the treatments did not prove to be effective, so the plaintiff brought suit for negligent breach of contract against Orkin. An adverse verdict was rendered by the trial court, and Orkin appealed.

The appellate court in *Walters* initially noted that the plaintiff had the option of suing Orkin in either tort or contract for the alleged negligent performance of a contractual duty. *Id.* at 58. The Court held that no matter which theory was chosen, Orkin's duty to the plaintiff was to be determined by the terms of its contract. The fact that plaintiff's cause of action was for a negligent breach of contract did not allow him to avoid the limitation of liability clause in the contract. *Id.* The Court quoted with approval the Court in *Better*

*Food Markets, Inc. v. American Dist. Tel. Co.*, 40 Cal.2d 179, 253 P.2d 10, 15–16 (1953), which stated:

> The plaintiff seeks to avoid the effect of the liquidation clause on the ground that it has no application to a tort action. However, the plaintiff makes no claim that a duty was owed to it outside of that created by the contract other than a failure to render the contracted for service. Although an action in tort may sometimes be brought for negligent breach of a contractual duty, still the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created that duty. In the present case the duty created by the contract was one for which liability for a breach thereunder was fixed, and whether the action is brought in tort or in contract the nature of the duty remains the same. The plaintiff cites no authority and none has been discovered to the effect that where the breach of a duty created only by contract is a negligent one the application of a valid cause for liquidated damages may be avoided. *Id.* at 58–59.

The *Pothier, Stevens, Worth, Wilcher* and *Walters* cases are directly on point with the instant case. The parties agreed that the termite contractor's liability, in the event that termite damage was discovered, would be limited to the re-treatment of the damaged area only. The homeowner further released Orkin from any obligation for repair of the property. This Agreement constituted the controlling law between the parties, and, as such, it must be enforced by this Court.

Plaintiff's first basis for opposing Orkin's motion is that the terms of Orkin's contract cannot be enforced because Orkin did not perform any treatment at all of a portion of the property. This contention is based on the written opinion of John McPherson, a former pest control operator, who issued his report to the plaintiff on January 11, 1990. On page 2 of his report, McPherson makes the following statement:

> "I want to see the results of the soil samples that the state inspector took in October of 1989. Since the termites were coming up all along the left side of the garage from the soil, *it seems that this area was not treated in July of 1988* in the original treatment of your home by Orkin."

It is on the basis of the underlined part of this statement in McPherson's report that the plaintiff contends that Orkin did not treat his home at all.

It is the position of plaintiff that Orkin's alleged failure to treat the left side of his garage amounts to total non-performance. However, if it had failed to do so, Orkin's performance would have been merely inadequate (thus requiring Orkin to re-treat the area) but would not amount to failure to treat at all as plaintiff contends.

Plaintiff also contends that his agreement with Orkin is evidenced by more than the contract he executed. He contends that an advertising brochure given him by Orkin prior to his execution of the Agreement was signed by Herman Johnson and Orkin.

■ The Agreement sets forth in large, bold-faced print the following integration clause:

**I UNDERSTAND THAT THIS AGREEMENT, THE ATTACHED INSPECTION/TREATING REPORT, THE GUARANTEE, IF ISSUED, AND THE WOODEN FLOOR REMOVAL AGREEMENT, IF ANY, ALL TOGETHER MAKE UP MY COMPLETE AGREEMENT WITH ORKIN AND THAT THIS AGREEMENT MAY NOT BE CHANGED IN ANY WAY BY ANY REPRESENTATIVE OF ORKIN OR ME UNLESS IT IS CHANGED IN WRITING AND SIGNED BY A CORPORATE OFFICER OF ORKIN EXTERMINATING COMPANY, INC., UNDER ITS CORPORATE SEAL. I HAVE HAD NO REPRESENTATIONS OR INDUCEMENTS MADE TO ME EXCEPT WHAT IS WRITTEN IN THIS AGREEMENT AND ORKIN AND I WILL BE BOUND ONLY BY ITS WRITTEN TERMS.**

This integration clause is conclusive in its effect, and plaintiff is presumed to know the contents of the contract which he

signed. *Hicks v. ODECO*, 512 F.2d 817 (5th Cir.1975); *Tweedel v. Brasseaux*, 433 So.2d 133 (La.1983).

Integration clauses similar to the one contained in the Agreement are valid and binding. *See, e.g., Franz Chem. Corp. v. Philadelphia Quartz Co.*, 594 F.2d 146 (5th Cir.1979); *Grumman Allied Ind., Inc. v. Rohr Ind., Inc.*, 748 F.2d 729 (2nd Cir. 1984); and *One–O–One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C.Cir.1988). Where the parties have stated the terms of their contract in the form of a complete integration, negotiations held prior to the written agreement are inadmissible to vary its terms. *See, e.g., Kaplan v. Am. Cotton Oil Co.*, 12 F.2d 969 (5th Cir.1926); *Jackson Brewing Co. v. Wagner*, 117 La. 875, 42 So. 356 (1906); and *Paige v. Pecoraro*, 48 So.2d 662 (Orl.App.1950).

CONCLUSION

Based on the foregoing, the Court hereby GRANTS partial summary judgment in favor of defendant, Orkin Exterminating Company, Inc., limiting defendant's liability to the provisions of the Renewable Reticulitermes–Subterranean Termite Re–Treatment Guarantee.